(No. 76-CC-0787—)

DANIEL HODGE, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 29, 1981.*

MANTON, JANOV & EDGAR, LTD. (RICK E. JANOV, of counsel), for Claimant.

TYRONE C. FAHNER, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

Roe, C.J.

Claimant filed this claim as a negligence action pursuant to the provisions of Section 8(d) of the Court of Claims Act. (Ill. Rev. Stat. 1977, ch. 37, par. 439.8(d).) Claimant alleged that on April 9, 1974, he was operating a motor vehicle upon State Highway 10 in Iroquois County, Illinois. State Highway 10 is owned and maintained by Respondent, State of Illinois. At the location of the accident, it was alleged that there was a concrete box culvert with 8-inch by 10-foot headwalls rising 1.5 feet above the pavement lying near the travelled portion of Highway 10.

Claimant further alleged that on the date of the accident (April 9, 1974), he was operating his vehicle along Highway 10 and felt a sudden pull to the left on his motor vehicle, presumably from a bald front tire. Claimant's vehicle struck the headwall of the culvert, resulting

in the severance of Claimant's left leg from his body below the knee.

Claimant takes the position that the location, construction and maintenance of the concrete culvert was negligent and that the negligence of Respondent was the proximate cause of Claimant's injuries. Claimant prays judgment against Respondent in the sum of $100,000.00.

Claimant argues that the culvert headwall served no purpose whatsoever and that the presence of the headwall rendered the roadway unsafe. Claimant introduced evidence that highway construction standards in existence *on the date of the accident* were such that the concrete culverts, such as that involved in the present case, were obsolete and were in fact in the process of removal by the State of Illinois and by Iroquois County. Finally, Claimant argues that the medical evidence and testimony established that the presence of the headwall was responsible for the severance of the Claimant's leg when his vehicle struck the culvert.

Respondent argues that construction standards in existence for new or reconstructed highways should not be applied to culverts constructed in 1922. The evidence revealed that the culvert in question was constructed in 1922 and that the construction standard alluded to by the Claimant was promulgated in 1943. Respondent argues that the change of a standard, such as in the construction of culvert headwalls, could not and should not place a duty upon the State of Illinois to reconstruct or alter all existing culvert headwalls in the State of Illinois on State highways.

Respondent also argues that Claimant failed to prove probable cause. Respondent admits that Claimant's injuries were caused by collision with the culvert

headwall; however, Respondent disputes Claimant's position that the existence of the headwall was a proximate cause of Claimant's injuries and argues instead that Claimant's loss of control of his vehicle was the proximate cause of his injuries.

Undeniably, as Respondent argues, the burden of proof in this case is upon the Claimant. Respondent argues that Claimant totally failed to show a duty and violation thereof and that in the failure to show a duty on behalf of Respondent, the question of proximate cause becomes irrelevant. Respondent argues that even if Claimant did establish a duty to remove the headwall on the culvert, that the proximate cause of the accident was Claimant's failure to keep his vehicle on the main travelled portion of the highway. Respondent attacks Claimant's credibility with respect to the speed of Claimant's vehicle at the time of the accident and the manner in which Claimant's vehicle left the roadway. Finally, Respondent attacks Claimant's credibility with respect to Claimant's testimony that he had consumed only two beers and drove his truck around the town of Milfor, Illinois, for 2½ hours prior to the accident.

Walter Johansen, a registered professional engineer, was called as a witness by Claimant. Mr. Johansen qualifies as a highway design expert. He testified that the standard for the construction of highway culverts of the type involved in this case had, since March 3, 1943, provided and directed that culvert structures be flush with the earth work, so as to avoid creating hazards for vehicles leaving the main travelled portion of the roadway. It appears that the standard, introduced as Claimant's exhibit No. 1, was in effect on April 9, 1974, the date of the accident in the case at bar.

On cross-examination, Johansen admitted that he

had never been involved directly in maintenance of existing highways. He further testified that the standards about which he testified were standards applicable *to the construction* of Interstate Highway 57 and were used on the construction of that interstate. Further, he stated that these standards were relative to the design and redesign of old facilities, as well as the construction of new facilities. Johansen did not know if there were any specifications in force in 1974 at the time of the accident on the issue of upgrading State roads to current specifications and standards, other than the fact that *when a roadway was upgraded,* then it must be upgraded to latest standards. Johansen testified that "just because they change the standard they don't go out and rebuild every highway." Johansen did not know if the road in question had ever been upgraded or reconstructed since the adoption of the new standards which require headwalls to be flush with the level of the ground on the shoulders of the highway.

The State is not an insurer of the condition of highways under its maintenance and control. (*Schuck v. State* (1965), 25 Ill. Ct. Cl. 209; *Ohms v. State* (1975), 30 Ill. Ct. Cl. 410, 414.) The State is, however, under a duty to the motoring public to use reasonable care in maintaining roadways under its control. (*Ohms v. State, supra.*) In order to recover, Claimant must show, among other things, that the State breached its duty and that the breach was a proximate cause of the injuries to the Claimant.

It should be noted that Claimant has not seen fit to provide the Court with any citations of authority on any issue in this case other than a number of citations, the effect of which is that proof of drinking cannot be equated with intoxication and that it is error to introduce evidence of drinking unless there is evidence of intoxica-

tion. This was a collateral issue in the case and there was no real dispute concerning this rule of law. Not only has Claimant failed to cite any authority in connection with his theory of liability in this case, but neither has the State provided the Court with authorities in opposition to Claimant's theory. Apparently, neither Claimant nor the State felt it necessary to brief these rather important and delicate issues, and to leave the legal research to the Court and its commissioner.

We are unable to sustain Claimant's theory of liability in this case. Clearly, the State must use reasonable care in its maintenance of roadways. However, that is not the question in this case. The critical issue in this case is the extent and nature of the duty of the State to upgrade existing roadways to meet current standards applicable to reconstruction or new construction. Construction standards for roadways are bound to be changed from time to time to meet new or different conditions and to provide the motoring public with greater safety. The record is replete with references to upgrading work that was done from time to time on other culverts such as that in the present case where the headwalls that protruded above the earth's surface were removed. However, there was no evidence that this headwall was among those that should have been removed first or that this headwall would not have been removed in due course when State workers were able to devote their attention to this particular stretch of highway. Further, it is not unreasonable to conclude that monetary limitations would prevent the State from completely redoing every State highway at any time that the State adopts new construction standards for reconstructed or new highways. The impossibility of such a responsibility both from the standpoint of public finances and available manpower militates in favor of a rule that would

not require the State to undertake massive reconstruction of existing facilities.

Nor are we convinced that Claimant has established that the existence of the headwall was a proximate cause of his injuries. The evidence was vague at best on the question of what caused Claimant's vehicle to leave the main travelled portion of the roadway and thereby come in contact with the culvert wall. Claimant testified that he felt a pull on his vehicle similar to that which would be exerted by a flat tire. Claimant further testified that his speed was prudent and reasonable and that weather conditions were excellent immediately prior to this accident. Claimant was a young man with substantial driving experience. It is unlikely that a flat tire would have caused such a violent misdirection of Claimant's path of travel as to have rendered this accident unavoidable and not without contributory fault on the part of the Claimant.

It is hereby ordered that this claim be, and hereby is, denied.