(No. 5910—)

ROBERT SKINNER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 16, 1975.*

MILLER, HICKEY & CLOSE, by HAROLD L. TURNER, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; EDWARD L. S. ARKEMA, JR., Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant Robert Skinner has brought this action to recover for personal injuries and property damage incurred when the car in which he was riding collided with a car being driven by one Gaila Riddle at the intersection of Blackhawk Road and 20th Street in Rockford, Illinois, on October 5, 1969. The gravamen of Skinner's claim is that Respondent negligently failed to properly maintain a stop sign at the intersection.

On October 5, 1969, at approximately 5:00 p.m., Claimant was driving in a westerly direction on Blackhawk Road, an east-west street, near its intersection with 20th Street, a north-south avenue. Gaila Riddle was traveling southbound on 20th Street. The day was clear and the roads were dry. The speed limit on both Blackhawk Road and 20th Street was 65 miles per hour.

The intersection of Blackhawk Road and 20th Street is controlled by stop signs on the southeast and northwest corners of the intersection which stop traffic north and southbound on 20th Street. At the time and date in question the stop sign on the northwest corner, which halted southbound traffic on 20th Street, was not standing. The sign had been uprooted, and was lying on the shoulder of the road.

Gaila Riddle did not stop her car at the intersection and collided with the car being driven by Claimant.

This Court has often held that the State is not an insurer of the safety of all who travel its roads and is

required only to exercise reasonable diligence in maintaining roads under its jurisdiction. See *Weygandt v. State, 22 Ill.Ct.Cl. 498.* Claimant therefore bears the burden of proving by a preponderance of the evidence that Respondent was negligent in maintaining the intersection; that Respondent's negligence proximately caused his injuries; and that he was free of contributory negligence.

It is the Claimant's position that Respondent had both actual and constructive notice that the stop sign was uprooted. Respondent counters that it had neither actual nor constructive notice of the condition of the stop sign. Respondent further asserts that Claimant has failed to prove his freedom from contributory negligence; that it was the negligence of the drivers involved which proximately caused the accident; that Claimant's damages are speculative and uncertain; and that Claimant has failed to allege and prove facts necessary to invoke the jurisdiction of the Court of Claims.

Deputy Sheriffs Steve Holcomb and Ronald E. Betts who arrived at the accident scene shortly after the collision both testified that sometime prior to the accident they had observed the stop sign uprooted. Holcomb said that he and Betts had passed the intersection four or five days prior to the accident, and that he noticed that the stop sign was leaning over. He said he was certain that the sign was not completely uprooted at this time. Betts said that they passed the intersection sometime within seven days prior to the accident, and that the stop sign was completely down on this occasion. Betts confirmed that he and Holcomb reported the condition of the sign to the office of the Sheriff of Winnebago County. Betts further testified that it was the procedure in the Sheriff's office to relay such reports to the agency in charge of the particular road.

Mr. and Mrs. Paul Phillips resided on the northwest corner of Blackhawk Road and 20th Street. They had been on vacation for two weeks prior to the accident and returned to their home in the early morning hours of October 5. Neither could recall whether the sign was standing when they returned home, but at about 11:00 a.m. on October 5, they did notice that the sign was down. They did not report the condition of the sign to authorities.

Mr. Phillips testified that the sign had been uprooted "several times" from April, 1968, to the date of the accident.

Elizabeth Dye also resided near the intersection of Blackhawk Road and 20th Street. She testified that she had observed the downed stop sign earlier in the week, and that in the eight years that she lived in the area the sign had been uprooted a number of times.

Richard Sink, a foreman in the Maintenance Department of the State of Illinois Division of Highways, was called to the accident site to erect a temporary sign after the collision. He inspected the uprooted sign, and testified that the post was intact. He said the lower three feet of the post was covered by a thin layer of dirt which appeared to be moist. He said that to his recollection the weather had been warm and sunny for several days prior to the accident, and that in his opinion the pole had probably not been down longer than 24 hours.

Arley Webster also lived near the intersection in question and was employed at the offices of the General Telephone Company which were located approximately 1000 feet from the downed stop sign. Webster testified that at approximately 4:00 p.m. on Friday, October 3, 1969, he was working outside the General Telephone offices when he noticed that a woman's car had stalled on 20th Street. He testified that he helped the woman

push her car onto the shoulder of the road near the stop sign on the northwest corner of the intersection. Webster said that he specifically recalled that the stop sign was standing at this time, as he had difficulty in maneuvering the woman's car around the sign.

Reconciling all the foregoing testimony as to when the stop sign was standing and when it was down, the Court concludes that while the stop sign had indeed been uprooted from five to seven days prior to October 5, 1969, and that Respondent presumptively had actual notice of this fact, the stop sign had been re-erected sometime prior to 4:00 p.m. on October 3, 1969. This is the most plausible explanation for the testimony of Deputy Sheriffs Betts and Holcomb that the stop sign was down earlier in the week, and the uncontradicted testimony of Arley Webster that the stop sign was standing at 4:00 p.m. on October 3, 1969. Our conclusion is buttressed by the fact that moist dirt covered the lower three feet of the post although the weather had been warm and sunny for several days prior to the accident indicating that the bottom of the post had not been exposed for any great period of time.

It therefore appears that the sign was uprooted sometime between 4:00 p.m. on October 3, 1969, and 11:00 a.m. on October 5, 1969, when Mr. Paul Phillips noticed that the sign was down. The issue thus framed is whether, in these circumstances, the State may be charged with constructive notice of the condition of the sign on October 5, 1969.

Respondent may be charged with constructive notice of a dangerous condition when, from all the circumstances of a case, it is determined that Respondent should have been aware of the existence of the condition in the exercise of reasonable care and diligence. *Joyner v. State, 22 Ill.Ct.Cl. 213, 217.* That is, the dangerous

condition must have existed for such an appreciable length of time that the Respondent can be charged with negligence in not ascertaining and correcting the condition.

In *Hilden v. State, Ill.Ct.Cl. No. 5652, filed May 11, 1971,* we held that a two day long malfunction in a traffic signal was not a sufficiently lengthy period to put the State on notice of the defect. The evidence here shows that this stop sign had been down for a period of less than two days at the time of accident and under our holding in *Hilden*, we must conclude that Respondent cannot be charged with constructive notice of this fact.[1]

Claimant urges, however, that the State had notice that the sign was subject to being periodically uprooted and should have instituted a program of regular inspections of the intersection. While the record indicates that this particular stop sign had been uprooted previously, we are still unable to charge the State with constructive notice of its condition on October 5, 1969. The record shows that the stop sign had been repaired sometime between October 1 and October 3, 1969, and was upright and in good condition at 4:00 p.m. on October 3. To charge the State with constructive notice of the condition of the sign on the morning of October 5, under these circumstances, would be tantamount to making the State an insurer of the condition of all traffic signals under its jurisdiction and control.

Finally, Claimant contends that Respondent was negligent in not anchoring the stop sign by extraordinary means after it had been uprooted on prior occasions. Claimant points to the testimony of Mr. and Mrs.

---

[1]More recently, and directly in point, is *Pyle v. State, Ill.Ct.Cl. No. 5343, filed November 10, 1973,* wherein this Court made a thorough analysis of leading authorities on the question of notice in tort claims based on downed stop signs.

51

Phillips that the sign was down three times between April, 1968, and October, 1969, and the statement of Elizabeth Dye that the sign was down "many times" during an eight year period. Claimant further points out that after the accident on October 5, 1969, the stop sign was anchored with a post twice as large as the old post, and the sign had not been uprooted from the date of the accident to the date of the hearing herein.

Donald R. Love, Supervisor of State Highway Maintenance in Winnebago County, testified for Respondent that the stop sign in question was placed on a pole which measured four inches by four inches on each side. The sign weighed 50 to 60 pounds, and was the standard stop sign as used throughout the country. While the intersection had been troublesome, Respondent did not act unreasonably in utilizing a standard stop sign.

Claimant has failed to establish that Respondent had actual notice of the condition of the downed stop sign on October 5, 1969, and considering all the facts of this case, we find that the stop sign had not been down for a sufficient period to charge Respondent with constructive notice of the condition. Claimant has further failed to establish that Respondent was negligent in utilizing a sign of standard construction at the intersection in question.

Claimant's claim is accordingly denied.