88

(No. 84-CC-0609– 

GREGORY WIEGERS, individually, and GREGORY WIEGERS for the benefit of Boilermakers National Health & Welfare Fund, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 4, 1988.*

CARR, KOREIN, SCHLICHTER, KUNIN & MONTROY, for Claimant.

NEIL F. HARTIGAN, Attorney General (CLAIRE GIBSON TAYLOR, Assistant Attorney General, of counsel), for Respondent.

DILLARD, J.

This claim arose from an incident which occurred on March 23, 1982, when a pickup truck operated by the Claimant was struck in the rear by a vehicle that had

been struck by a State road grader operated by the Respondent's agent. Claimant seeks judgment under section 8(d) of the Court of Claims Act for injuries sustained by him "due to negligence in the care and operation of a motor vehicle" owned and controlled by the Respondent. Ill. Rev. Stat. 1985, ch. 37, par. 439.8(d).

## FACTS

The facts which bear upon the question of Respondent's liability in this case are not in substantial dispute. Respondent's agent was driving a small road grader on Route 111 in St. Clair County approaching its intersection with Route 40. As the road grader approached the intersection, the stoplight facing the road grader was red. Vehicles were stopped in front of the road grader for the red light. Respondent's agent applied his brakes to bring the road grader to a stop. The brakes on the road grader failed. The road grader struck a car stopped for the red light and pushed that car into the rear of the pickup truck operated by Claimant. Claimant's truck was damaged and a repair estimate for $191.00 was attached as exhibit "B" to Claimant's complaint. Additionally, Claimant alleged damages for "substantial injuries sustained by Claimant." Respondent admitted that Claimant was free from any contributory negligence.

Claimant asserts the liability of Respondent under the doctrine of *res ipsa loquitur* since the road grader was under the exclusive management of Respondent and that the collision would not have happened had Respondent taken proper care. Claimant argues that the accident itself is evidence of a lack of due care and creates a presumption of negligence which must be rebutted or overcome by the Respondent.

Respondent contends that it was not negligent and that the doctrine of *res ipsa loquitur* does not apply to the facts in the case at bar. Respondent argues that the accident was unavoidable and that the Respondent had no reason to suspect that the brakes on its vehicle would fail. Respondent asserts that there was no evidence that Respondent's driver was negligent or could have avoided the impact which is claimed to have caused Claimant's damages. Respondent asserts that there is no evidence the State had noticed that the brakes were faulty, or had not been inspected or that the defect in the brakes would have been discovered on inspection. Respondent reasons that the doctrine should not be applied in this case because "in the ordinary course of things, and even when proper care is exercised, mechanical failures, and specifically vehicle brakes failures, do sometimes occur."

Furthermore, Respondent points to the fact that the road grader had, on the day of the accident, been operated safely for seven hours prior to the accident without incident. Respondent indicates that although their agent was initially suspended from his employment due to the accident, the agent was reinstated when the brakes on the vehicle failed a second time on a later occasion. Respondent urges this Court to assume that such reinstatement would not have occurred unless it had been determined that the condition causing the brake failure was latent and could be found only with extraordinary examination or became apparent only after the condition worsened. From these premises, the Respondent argues that the mechanical problem which apparently caused the brake failure "simply could not be detected, so Respondent had no duty to correct it."

## LAW

In *City of St. Louis v. State* (1964), 24 Ill. Ct. Cl. 477,

a mechanical failure in an Illinois National Guard aircraft fighter plane preceded an emergency landing at St. Louis Municipal Airport by Respondent's pilot. Damage was caused to airport equipment. This Court in an opinion authored by Perlin, C.J., stated as follows:

"Claimant urges that the doctrine of *res ipsa loquitur* be applied in the instant case. The Court of Claims has recognized this doctrine as follows: When an injury is caused by an instrumentality under the exclusive control of the party charged with negligence, and is such as would not ordinarily happen if the party having control of the instrumentality had used proper care, an inference or presumption of negligence arises. The burden then rests upon Respondent to rebut the presumption of negligence arising from the facts of the case."

Thus, the Court held that since the airplane which caused the damage was under the sole management and control of Respondent, it was permissible to assume that the accident would not have occurred if proper care had been used. Also, the Court indicated that Respondent offered no evidence to rebut the presumption of negligence which arose under the facts and an award was granted. The holding in *City of St. Louis* has been subsequently cited with approval in *Rivoltorto v. State* (1971), 27 Ill. Ct. Cl. 210.

In *People v. Morris* (1978), 60 Ill. App. 3d 1003, 377 N.E.2d 210, the defendant's vehicle went off the road and hit a light pole. The State of Illinois sued the motorist for damage to the pole. In discussing the doctrine of *res ipsa loquitur*, the Appellate Court of Illinois for the First District set forth the following:

"The purpose of the doctrine is to allow proof of evidence circumstantially when direct evidence concerning the cause of injury is primarily within defendant's knowledge and control (citation). To invoke the doctrine and raise the presumption of negligence, plaintiff must establish that the accident itself affords reasonable evidence that it would not have ordinarily occurred in the absence of someone's negligence; that the instrumentality which caused the injury is within the exclusive control of defendant; and that plaintiff was free from contributory negligence (citations) and it is now well established that plaintiff may proceed on alternative theories of *res ipsa loquitur* and specific negligence (citations).

Here, we believe that the requirements necessary to create a presumption of negligence in *res ipsa loquitur* are present. First, an automobile collision with a stationary object does not ordinarily happen in the absence of negligence and the doctrine of *res ipsa loquitur* has been applied in such cases. (Citations.) Second, defendant's exclusive control was established by her admission in her answer that she was the owner and operator of the car which struck the light pole and from her testimony at trial to that same effect. Third, as stated above, the record establishes that plaintiff was free from contributory negligence." *Supra.*

We agree with Respondent that it is possible for mechanical failures to occur in the road grader even when proper care is exercised and in a totally unforeseen manner. However, if evidence was available to Respondent that such proper care had been utilized with respect to the maintenance of the road grader and brakes, such evidence was not produced on the record. This Court will not speculate as to the availability of such evidence when the record is barren of any proof concerning the care of the vehicle or the nature of the defect which apparently caused the brakes on Respondent's road grader to fail. Finally, Respondent's reinstatement of its agent does not lead us to the conclusion, urged by Respondent, "that ordinary inspection did not reveal the cause of the brake failure, but that it was later found by some more extraordinary examination, or perhaps became apparent only after worsening."

Accordingly, the doctrine of *res ipsa loquitur* is applicable in the case at bar. Respondent's failure to come forward with proof of the exercise of due care in the maintenance or inspection of its vehicles leaves the presumption of negligence created by the doctrine unrebutted. Therefore, Respondent is liable to Claimant for such damages as have been properly shown by the evidence.

## DAMAGES

Respondent seeks damages for his injuries and the

damage to his motor vehicle in his verified complaint; however, Claimant's brief is predicated only by a claim for recovery of $85,000.00 "for injuries."

Claimant testified that at the time of the accident he was jerked forward and back and noticed pain in his shoulder, chest and neck. He did not go to work and returned home where he called his doctor and then proceeded to the doctor's office. Claimant's doctor admitted him to the hospital in Belleville, where he remained for 12 days. Claimant testified that he received treatment consisting of physical therapy, hot packs, ultrasound and diathermy, medication and bedrest. Claimant said that at the conclusion of 12 days he was not feeling any better. Claimant testified that the wearing of necessary protective apparel in his work as a boilermaker causes him problems. The weight of the welding hood and hardhat creates pressure on his neck which causes pain and aggravation. Claimant was also treated by Dr. Max Goldenberg commencing in September 1982.

Goldenberg's working diagnosis was soft tissue injury of Claimant's neck. Goldenberg treated the Claimant with diathermy, cervical traction and anti-inflammatory agents with pain relievers. Goldenberg testified that in his opinion Claimant's sprain or strain of the cervical area would be permanent and that the Claimant would need medical care in the future. Goldenberg's bill for services through March 2, 1984, was in the amount of $1,776.80.

At the time of Claimant's injury, he was working as a journeyman boilermaker out of Boilermaker Lodge Local 363 and earning $17.05 per hour straight time and $25.58 per hour overtime. Claimant's business agent testified that Claimant would have been called out on

three jobs had he not been convalescing from injuries sustained in this accident. The jobs were at the Coffeen Power Plant, the Baldwin Power Plant, and the Monsanto Chemical Plant. For this loss, Claimant claims $10,531.00. After the hearing in this cause, Boilermaker's insurance tendered to the Claimant its claim for a debt arising from the Boilermaker's payment of medical expenses for Dr. Goldenberg. Respondent objects to joining the Boilermaker's National Health & Welfare Fund as a party plaintiff under section 2—616 of the Code of Civil Procedure. (Ill. Rev. Stat., ch. 110, par. 2—616.) However, this Court will allow and it is ordered that Claimant's motion to amend to add the Boilermaker's National Health & Welfare Fund as a party plaintiff, to the extent of their payment of Claimant's medical bills ($693.66), is granted.

Accordingly, it is hereby ordered that judgment be and is hereby rendered that the Boilermaker's National Health & Welfare Fund receive judgment in the amount of $693.66; and that Claimant receive total judgment of $19,788.28 for injuries sustained which includes lost wages, property damage to Claimant's automobile and medical services for a total award to Claimant of $20,481.94.