(No. 86-CC-0515—)

GORDON MILEY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 2, 1997.*

BILL T. WALKER, Granite City, for Claimant.

JAMES E. RYAN, Attorney General (AMY RATTERREE, Assistant Attorney General), for Respondent.

## OPINION

RAUCCI, J.

The Claimant, Gordon Miley, brings this action for compensatory damages pursuant to the Illinois Court of Claims Act, 705 ILCS 505/8. The Claimant asserts that he was injured as a direct and proximate result of negligence committed by the State of Illinois in the maintenance of a traffic control barricade at a construction site on Interstate 74 approximately one mile west of Farmer City, in DeWitt County, Illinois.

At approximately 9:05 p.m. on October 17, 1983, the Claimant was driving a 1981 Chevrolet Chevette east on Interstate 74 when he struck a barricade that was lying on its side in the right lane of eastbound Interstate 74. The leg of the barricade punctured the floorboard of the Claimant's car, striking him in the left foot and ankle.

The Claimant was taken to Burnham Hospital in Champaign, Illinois. He later sought treatment from

other doctors, clinics and from St. Elizabeth Hospital in Danville, Illinois. The Claimant suffered a broken left ankle and lacerations to his left foot and leg. The Claimant is seeking $800.98 for damage to his automobile, $2,150.27 for medical bills, $40,000 for lost income, $200,000 for disability and future lost income, and $100,000 for pain and suffering. The Claimant contends the Respondent was negligent by failing to use barricades which, after once being struck, would pose no danger to motorists; failing to adequately monitor placement and location of its barricades; failing to remove the barricade before it was struck by the Claimant; and using a steel-legged barricade that had legs that did not collapse flat against the pavement when laid on its side. The Claimant also filed a count under the doctrine of *res ipsa loquitur*.

A hearing was held before Commissioner Stephen R. Clark on February 7, 1996, at which there was testimony from the Claimant and from Douglas White, utility coordinator for the Illinois Department of Transportation (hereinafter "IDOT") and former traffic control supervisor for IDOT. The Commissioner admitted into evidence the depositions of Dr. Mehta and of Nyle Dyer, a patching crew supervisor with IDOT. The Commissioner also admitted into evidence the Claimant's notice of injury; the barricade struck by the Claimant; photographs of the Claimant's automobile following the accident; a request for admissions in which the Respondent admitted that it owned the barricade and placed it at the location on Interstate 74; photographs of the barricade after it was removed from the Claimant's car; traffic control inspection reports from IDOT; an IDOT report stating that the only barricade that was down was the one the Claimant struck; the ledger diary of Nyle Dyer for October 17 and 18, 1983; an IDOT memorandum stating that barricades are

inspected daily; the Respondent's answers to Claimant's request for admissions of fact and documents, which included portions of an IDOT manual entitled Traffic Controls for Streets and Highway Construction and Maintenance Operations; IDOT's Standard 2316-7, which depicts the placement of traffic control devices for highway construction sites in general; and IDOT's original and supplemental IDOT reports. The Commissioner took judicial notice of the fact that October 17, 1983, was a Monday. Only the Respondent submitted a brief.

The Claimant testified that at 9:05 p.m. on October 17, 1983, he was driving from his father's house in Sterling, Illinois, to his home in West Lebanon, Indiana. He saw a warning of road work ahead and a flashing arrow telling motorists to move to the left lane. The Claimant stated that he moved to the left lane and drove past the barricaded area on the right at a speed of 45 miles per hour. He testified that there was traffic behind him, and after it appeared that he had passed the barricaded area, he moved back to the right lane and accelerated to a speed of between 45 and 50 miles per hour. The Claimant stated that about 20 feet ahead of him he saw something in the highway, which turned out to be a barricade lying on its side. He said the legs of the barricade were standing up. The Claimant stated that the light on the barricade was not operating. The Claimant testified that there was a truck passing him on his left and a ditch or incline to his right. He stated that he braked, downshifted and steered to the right to avoid the barricade, but struck it. The barricade penetrated the floorboard of the car under the clutch and struck the Claimant in the left foot. The Claimant stated that he did not see any "end construction" signs, nor did he see any other barricades after the one he struck. The Claimant testified that he still suffers from swelling and stiffness in his left ankle and takes

aspirin once or twice a week for pain. The Claimant, who operates a hair salon, stated that he is unable to service as many customers as he did before the accident. He said a full day normally would consist of cutting 20 heads of hair, but now he can only cut up to 15 heads of hair.

Douglas White, who was a traffic control supervisor at the time of the accident, testified that it was his job to inspect sites to ensure that traffic control measures were properly in place, including checking the condition of the barricades, seeing where they were placed and whether they were upright. He stated that the construction site on Interstate 74 was in place starting October 12, 1983, but he did no inspections until October 26, 1983—nine days after the accident occurred. He testified that the usual procedure for correcting problems with traffic control at a construction site was to write a report and mail it to the engineer in charge of the site. Sometimes he would talk to the engineer on site. White testified that he normally inspected construction sites once a week. He stated that if he saw a barricade lying on the ground, he would not set it back up or put it to the side, but would make a report. White testified that IDOT standards call for barricades to be spaced 50 feet apart in a taper at the beginning of a highway construction site, then 100 feet apart along the work area for the first 500 feet and 200 feet apart for the remainder of the work area. The IDOT report also included a hand-drawn diagram showing that the downed barricade was the third to the last barricade placed before the construction site ended. However, White testified that he could not say that the diagram depicted the site on the day of the accident.

In his deposition, Nyle Dyer testified that he was the supervisor of the road crew performing the patching work at the accident site. He stated that it was IDOT's policy for

road crews to monitor the steel-legged barricades at the construction sites during the night. Dyer testified that a crew member would visit the site every hour or hour and a half to check the lights on the barricades, to make sure the barricades were upright and in their proper positions, and to make sure all warnings signs were in place. He said the crew would stop checking about midnight because there was little traffic in the early morning hours. Dyer stated that on this job, the crew stayed at a nearby motel in Farmer City. When the crew went home on weekends, they would take the barricades down. Dyer said that although he did not recall whether anyone checked the site on the night of the accident, he said the time sheets for the project might reflect if a crew member went to the site at night because overtime would be reported on the time sheets.

A review of the time sheets for October 17 and 18 showed that Dyer's crew did work on those days, but no overtime was recorded that might indicate that crew members checked the barricades at night.

The following portions of IDOT's standards entitled Traffic Controls for Streets and Highway Construction and Maintenance Operations were admitted into evidence:

"Channeling devices should be constructed so as not to inflict any undue damage to a vehicle that inadvertently strikes them."

"Barricade rails should be supported in a manner that will allow them to be seen by the motorist, to provide a stable support, not easily blown over by the wind or traffic."

"Barricades are located adjacent to traffic and therefore subject to impact by errant vehicles. Because of the vulnerable position and possible hazard they could create, they should be constructed of lightweight materials and have no rigid stay bracing of A-frame designs."

"As type two barricades have more reflective area, they are intended for use on expressways and freeways or other high speed roadways."

"Special consideration must be given to the modern high speed and usually limited access type of highway to accommodate traffic in a safe and efficient manner and for adequate protection of work forces."

We first consider the Claimant's assertion of the doctrine of *res ipsa loquitur*. We have recognized the doctrine as follows:

"When an injury is caused by an instrumentality under the exclusive control of the party charged with negligence, and is such as would not ordinarily happen if the party having control of the instrumentality had used proper care, an inference or presumption of negligence arises. The burden then rests upon Respondent to rebut the presumption of negligence arising from the facts of the case." *Weigers v. State* (1988), 40 Ill. Ct. Cl. 88, 91.

The first requirement for application of the doctrine of *res ipsa loquitur*—that the instrumentality causing the injury was under the exclusive control of the Respondent—is not present here. Because the barricade was sitting on a public highway, where it is subject to acts of people or acts of God without the knowledge of the Respondent, it could not have been within the exclusive control of the Respondent. This Court has applied the doctrine in such cases as brake failure on a State vehicle, as in the *Weigers* case, and the collapse of a rotten tree, as in *Metzler v. State* (1971), 27 Ill. Ct. Cl. 207, where there was no proof that outside instrumentalities caused the tree to collapse. Therefore, we decline to apply the doctrine of *res ipsa loquitur* in this case.

The State of Illinois is not an insurer of the condition of the highways under its maintenance and control, but it does have a duty to use reasonable care in maintaining roads under its control. (*Baker v. State* (1989), 42 Ill. Ct. Cl. 110, 114-115.) The exercise of reasonable care requires the State to keep its highways reasonably safe. It is the duty of the State to maintain its highways so that defective and dangerous conditions likely to injure persons lawfully on the highway shall not exist. To be in a dangerously defective condition, the highway must be in a condition unfit for the purpose it was intended. To be held liable for negligence, the State must have actual or constructive notice

of a dangerous condition and permit the dangerous condition to exist without warning to the motoring public. *Baker*, 42 Ill. Ct. Cl. at 115.

In the case at bar, it is obvious that a dangerous condition existed that caused the highway to be unfit for the purpose for which it was intended. A fallen barricade with its steel legs sticking upwards is dangerous. The Claimant testified that it appeared that the construction zone had ended and he was free to return to the right lane and resume his normal speed. He saw no barricades after the one he struck. The only evidence to the contrary was a hand-drawn diagram showing that there were more barricades after the one the Claimant struck. However, witnesses admitted that they could not say that this diagram accurately reflected the accident scene at the time. There is no direct evidence to rebut the Claimant's testimony.

It appears that the Claimant exercised reasonable care upon seeing the downed barricade. He attempted to slow down and steered to the right, but the position of the barricade, a truck to his left, and a ditch to his right prevented him from avoiding striking the barricade. Therefore, it is the finding of this Court that a dangerous condition existed that the Claimant could not avoid.

However, we find that the Claimant's claim must fail for lack of proof of actual or constructive notice to the Respondent of this condition. To find that the Respondent had constructive notice of a dangerous condition, it must be shown that the defect was substantial enough and must have existed for such a length of time that reasonable persons would conclude that immediate repairs should be made, or, in the alternative, that warning signs be posted. (*Aetna Casualty & Surety Co. v. State* (1984), 37 Ill. Ct. Cl. 179, 181.) The dangerous condition must have existed for such an appreciable length of time that the Respondent

can be charged with negligence in not ascertaining and correcting the condition. *Skinner v. State* (1975), 31 Ill. Ct. Cl. 45, 49-50.

Where there is an absence of proof as to how long a dangerous condition existed, there is no evidence upon which to charge the State with notice of its existence, and, therefore the requirement of notice is not met. (*Baker*, 42 Ill. Ct. Cl. at 115; *Cataldo v. State* (1983), 36 Ill. Ct. Cl. 23, 25.) In cases where this Court has found constructive notice of a dangerous condition, there has been affirmative evidence of the length of time that the condition existed. See *Miholic v. State* (1979), 33 Ill. Ct. Cl. 23; *Palecki v. State* (1971), 27 Ill. Ct. Cl. 108.

In the case at bar, if the Claimant had shown that the barricade had been down for a substantial period there would be no doubt that the Respondent had constructive knowledge of the dangerous condition. According to Mr. Dyer's testimony, it was IDOT's policy to check the barricades routinely before midnight. There is no evidence whether or not these checks were actually made. The burden of proof is the Claimant's, and he has not met his burden.

The Claimant was unable to show whether the barricade had been down for five minutes or five hours.

It is therefore ordered, adjudged and decreed that this claim be and is denied, dismissed, and forever barred.