(No. 86-CC-1419–)

DANNY L. DIXON and CELIA T. DIXON, Claimants, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 30, 1998.*

ISADORE M. BERNSTEIN and GRAZIAN & GRAZIAN (DOUGLAS W. GRAHAM, of counsel), for Claimants.

JIM RYAN, Attorney General (SEBASTIAN N. DANZIGER, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

Claimants, Danny L. Dixon and Celia T. Dixon, filed their complaint sounding in negligence on December 9, 1985. Claimant, Danny L. Dixon's claim is a claim for personal injuries he received in a motorcycle accident and Claimant, Celia T. Dixon's claim is for loss of consortium. The cause was tried before one of the Court's Commissioners.

This cause of action comes before the Court for final decision on the claims of Danny L. Dixon and Celia T. Dixon (hereinafter collectively referred to as "Claimants" or "Claimant Dixon") for personal injuries sustained by the Claimants due to the alleged negligence of the Respondent, State of Illinois, by and through its agents and employees of the Department of Transportation in maintaining one of its roadways. The incident occurred on

September 9, 1985, on an on-ramp to the Stevenson Expressway from Highway 171 (also known as First Avenue) in Cook County, Illinois.

By agreement of the parties and the approval of the Commissioner, the hearing of this claim was bifurcated as to liability and damages. The trial on March 2, 1998, dealt solely with the issue of liability. The parties have agreed that damages are to be considered at a second hearing to be scheduled should a decision in Claimants' favor on liability be rendered by this Court.

## The Facts

On Monday, September 9, 1985, the Claimant, Danny Dixon, was riding his Honda motorcycle home from his workplace as he had done for a number of years. Claimant's motorcycle was his preferred mode of transportation. His regular route was to take Joliet Road to an entrance ramp of the Stevenson Expressway.

As Claimant proceeded onto the ramp, the Claimant suddenly identified a large pothole in his path. He was behind other vehicles. Claimant believes the dimensions of the pothole were approximately three feet by five feet in width and length and four to six inches deep. Claimant's motorcycle went into the pothole and struck the distant edge with enough force to bend the front forks of his wheel. After hitting the pothole, the Claimant was unable to control his motorcycle and struck the side of the on-ramp bridge. When Claimant's vehicle struck the side of the bridge, the motorcycle stopped, and Claimant was thrown forward and seriously injured. At the time of the accident, the Claimant was traveling between 40 and 45 miles per hour, which was at or near the posted speed limit.

On Friday, September 6, 1985, the Claimant had traveled the very same route and had not encountered or

seen any pothole. The first time that Claimant observed the pothole was when he hit it.

The testimony of State employee Kenneth Chlebicki indicated that the Illinois Department of Transportation's (IDOT) Stevenson yard was responsible for the maintenance of the area of highway where Claimant had his accident. Various crews left the Stevenson yard on September 9, 1985, in order to perform various jobs. It appears that those crews took the same route from the yard to the expressway and used the same on-ramp where Claimant's accident occurred.

Part of the responsibilities of those road crews would be to report road conditions, such as a large pothole. The IDOT procedure was that after a report of a pothole from a crew member or the public, Mr. Chlebicki or a foreman would investigate the scene and determine what, if any, work was necessary. A road crew would stop and patch a large pothole upon observation of such a condition, even if that was not their specific task that day. A written report would not necessarily be generated if a crew patched a pothole en route to another job or if a complaint was phoned into the yard. Mr. Chlebicki agreed that IDOT had patched the pothole in question at some time, but could not give the specific time frame when the repair was done, how that repair was accomplished, or any other specifics regarding the type of repair.

IDOT had no written record as to any prior complaint of a pothole or other dangerous condition in the area where the Claimant had his accident, nor did IDOT have any record of a prior patching or filling being performed on a pothole in the area. Additionally, IDOT had no record of any complaints of this pothole on September 9, 1985.

Both the Claimants and Respondent called experts to testify. Louis S. Jacobs, Ph.D., testified for Claimants

that the standard of care required a machine compaction when utilizing asphalt patching on a pothole on a concrete roadway. In his opinion, an improperly compacted asphalt patch, i.e. one tamped by hand, would stay in the pothole only three to four days, depending on traffic. In Mr. Jacobs' opinion, and depending on the traffic conditions, it is possible that a "new" pothole could be formed in a concrete roadway in two months.

Respondent's expert, Fred Ludtke, testified that a pothole that was filled and subsequently hand-tamped would meet the standard of care for road construction and maintenance. Temporary measures, such as a cold/hot mix asphalt patch, can meet the standard of care under most circumstances. He further opined that putting a barrier up to warn motorists at the location of Claimant's accident would be hazardous given the location of the pothole. Claimants presented no evidence of any prior notice of this pothole to IDOT.

### The Law

The fact that a defect in a highway may have caused the accident is not determinative of negligent conduct on the part of the Respondent. In order for a Claimant to recover for injuries suffered as a result of an accident on a State highway due to a pothole, the Claimant must prove, by a preponderance of the evidence, that the State was negligent, that the State's negligence was the proximate cause of the injuries, that a dangerous condition or defect existed, and that the State had actual or constructive notice of the dangerous condition or defect. (*Scroggins v. State* (1991), 43 Ill. Ct. Cl. 225.) The Claimant bears the burden of proving by a preponderance of the evidence that the State was negligent in its duty to maintain the roadway in question and that the State's negligence proximately caused Claimant's injuries. (*Skinner v. State*

(1975), 31 Ill. Ct. Cl. 45.) The State has a duty to exercise reasonable care in maintaining its highway so that defective and dangerous conditions do not exist. (*Baren v. State* (1974), 30 Ill. Ct. Cl. 162.) However, the State is not an insurer of the safety of those persons who travel upon its highways. *Trotter v. State* (1993), 45 Ill. Ct. Cl. 165.

Under the facts of this case, the threshold question that must be answered is whether the Respondent had actual or constructive notice of the defect alleged to have damaged the Claimant's motorcycle causing it to hit the bridge. If the question is answered affirmatively for the State and against the Claimant, there is no need to resolve the remaining issues raised by Claimants' pleadings. However, if the State is found to have actual or constructive notice of the defect or dangerous condition, the issues of duty, proximate cause and comparative negligence must be analyzed.

A thorough review of the evidence leads the Court to the conclusion that the Respondent, by and through its agency, the Department of Transportation, did not have actual notice of the pothole which caused Claimant to crash his motorcycle into the side of the bridge. Claimant provided no actual notice of the pothole. The Court further finds that the Respondent did not have constructive notice of the dangerous condition. This finding is based primarily upon the testimony of Claimant, Danny Dixon. Mr. Dixon testified that the very large pothole that caused his accident and injuries on September 9, 1985, was not in existence at 4:00 p.m. on Friday, September 6, 1985. Therefore, the pothole existed for a maximum period of 72 hours, but more likely for a shorter period of time. Claimant presented no IDOT records of prior complaints of a pothole in the area between September 6, 1985, and September 9, 1985. No additional testimony or

exhibits were offered by the Claimants that established actual or constructive notice of the alleged dangerous condition or defect that caused Claimant's accident.

Whether the State had constructive notice depends on the facts of each case. (*Stills v. State* (1989), 41 Ill. Ct. Cl. 60.) It must be shown that the defect was substantial enough and must have existed for such a length of time that reasonable persons would conclude that immediate repairs should be made or, in the alternative, that warning signs should be posted. (*Stege v. State* (1971), 27 Ill. Ct. Cl. 399.) Mr. Chlebicki testified that a large, shallow pothole, as he considered this one, was not the type of road irregularity that would be cause for immediate repair or other action by his department.

With regard to duration, it was explicitly established by Claimant's testimony that this defect existed for a period of less than 72 hours. This time period is considerably less in comparison to that which was presented in the case of *Blair v. State* (1994), 47 Ill. Ct. Cl. 108, where testimony established that the large, deep, unpatched pothole existed for a minimum period of two months. This court found constructive notice of the dangerous condition established in *Blair, supra*. However, we cannot find that the pothole in this case existed long enough to impute constructive notice to the State.

The Claimants seek to establish that the Respondent had constructive notice of the defect because the pothole had been repaired by IDOT at some prior time and that, therefore, Respondent had a duty to diligently maintain that repair. Claimant relies upon Mr. Chlebicki's testimony that, hypothetically, if the pothole was repaired prior to September 6, 1985, IDOT would have done those repairs. Mr. Chlebicki viewed the photographs which showed the apparent presence of asphalt patch in the

post-accident photos. However, these were post-accident photos and there was no proof the pothole had been in existence prior to Claimant's accident.

Claimants rely on the decision in *Immordino v. State* (1995), 47 Ill. Ct. Cl. 78. *Immordino, supra,* is similar to the case at hand, but distinguishable because in *Immordino, supra,* an IDOT employee testified that he had inspected the "chuck hole" that caused an accident. That employee admitted the hole appeared to have been patched by IDOT with cold patch which did not stick in the hole. Such an admission by the Respondent is not present in the instant case. In this case, there was no proof that IDOT was aware of the pothole before Claimant's accident. In fact, there is no credible evidence presented that any pothole patching had been done by IDOT in this area prior to this occurrence, whether it be with cold patch or hot patch, hand tamper, or machine tamper. What is clear is that Claimant took this very route home every work day for a period of almost ten years and he failed to observe the large three-foot by five-foot by four- to six-inch deep pothole at any time prior to the time of the accident. The first time he saw the pothole was when he hit it. It is also significant that Claimant had ridden his motorcycle to and from work for approximately one year, yet had no recollection of running over such a pothole during that time. The testimony of the experts for both Claimants and Respondent indicates that a pothole in concrete develops over a long period of time. Claimant offered no testimony that anyone was aware of a pothole developing on this portion of roadway during the years preceding this accident.

The conclusion we must draw from the evidence presented is that Claimants have failed to prove that Respondent had actual or constructive notice of the pothole

18

which caused Claimant's injuries. Because of the vast highway system, the Respondent is only responsible if it has actual or constructive notice of a dangerous or defective condition and fails to reasonably repair the condition or notify the public of the danger. To rule otherwise would hold Respondent to be an insurer of the safety of those using its highways. The law is clear that Respondent is not such an insurer. Claimants have failed to meet their burden of proof.

Since we find that Mr. Dixon has failed to prove his claim by a preponderance of the evidence, Mrs. Dixon's derivative claim must also fail.

For the foregoing reasons, it is the order of the Court that Claimants' claims be and hereby are denied.