(No. 94-CC-2142– )

SHARON WYSOPAL, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 3, 2000.*

KARLIN & FLEISHER (CHARLES E. TANNEN, of counsel), for Claimant.

JIM E. RYAN, Attorney General (DARIN L. RASMUSSEN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

PATCHETT, J.

This matter comes before the Court as a claim against the Illinois Department of Transportation for personal injuries sustained on an Illinois highway allegedly as a result of negligent maintenance. Claimant seeks damages in the amount of $100,000.

Claimant's husband, Albert Wysopal, testified that on October 10, 1993, at about 9:00 p.m., he and his wife, as

his passenger, were driving a Chevrolet Blazer south-bound on First Avenue between 47th Street and the ramp to Interstate 55 in Cook County, Illinois. Claimant's husband further testified that the weather conditions were clear and dry, traffic was light, and they were traveling at a speed of 50 mph when they struck a "huge" pothole.

Mr. Wysopal testified that, as a result of striking the pothole, Mrs. Wysopal struck her head against the interior ceiling of the vehicle. Although her immediate concern was for the safety of her infant son who was in the back seat, upon arriving home she realized pain and numbness in her neck.

Mrs. Wysopal testified that, prior to the accident, she had never suffered or been treated for any neck injuries. In the days following the incident described, she experienced excruciating neck pain, numbness, tingling, and inability to move her head. She sought treatment on October 12, 1993, at Good Samaritan Hospital, where she was referred to a neurosurgeon who performed a myelogram and diagnosed a herniated disc. The surgeon recommended, and ultimately performed, a cervical laminectomy. Claimant testified that, for a number of months following the surgery, she was able to return to most of her normal activities. She testified that she still suffers from episodes of neck pain, and her activities such as quilting and reading have been severely limited. She produced evidence that her medical bills totaled $23,509.90 and her lost wages totaled $3,263.43.

Claimant also called Robert Krause, a friend of Claimant, who testified that in 1992 and 1993 he traveled First Avenue approximately twice a month. He testified that in 1992 he was aware of a very deep pothole in the area of the incident and he always avoided the lane with

the pothole. However, Krause admitted he had never filed a report of such pothole.

Ken Chlebicki, an engineering technician for the Illinois Department of Transportation (IDOT) was called by the Claimant as an adverse witness. He confirmed that the subject roadway was under the control of IDOT on the date of the incident. He testified that, as a general rule, it is the responsibility of all IDOT employees to report road defects. After receiving notice of a defect, a crew would be dispatched to investigate the site. When potholes are identified, they are repaired with an asphalt mix that is black when applied and lightens with age. He further testified that if warranted, a repair could be made within an hour.

The subject site is an area that received medium traffic and would be serviced from IDOT's Stevenson Yard which is located approximately two miles from the incident scene. IDOT employees perform services and inspections from the Stevenson Yard on Mondays through Fridays. They do not perform inspections or services on weekends. He also stated that road defects may appear between Friday and Monday when the crews are not working.

Following an examination of the pictures of the accident site, Chlebicki testified that the pothole in question appeared to have been filled on more than one occasion, but he was unable to testify as to how many occasions or under what circumstances. Chlebicki further testified that after examining Claimant's photo exhibit number 7, he observed a "dip" or "defect" in the pavement which was preceded by a warning to motorists.

Chlebicki opined that the subject pothole would probably be repaired by filling it in with five to eight, or

eight to ten, shovels full of the asphalt material. He indicated that he could not determine its depth from the photos. The repairs to the subject pothole were actually made on October 12, 1993, two days after the accident in question. The amount of material actually used in the repair could not be determined.

The Claimant also produced, by evidence deposition, her treating physician and neurosurgeon, Dr. Daniel Harrison, M.D., who testified that the Claimant's neck injury was consistent with the car accident she described and was not related to any tumor or disease process. Following a myelogram and a CAT scan, Dr. Harrison performed a surgical laminectomy. The doctor met with the Claimant for 13 follow-up visits between November 10, 1993, and October 11, 1995. Dr. Harrison concluded that the ongoing pain complaints of the Claimant were reasonably consistent with the injury, the surgery and her physical build.

Finally, Claimant introduced climatological data which indicated that the average temperature on October 8, 9 and 10, 1993, was 63, 40 and 42 degrees respectively.

Respondent, through its departmental report, acknowledged that the subject roadway was under its control and jurisdiction. It denied having prior notice of the condition of the roadway.

The State is not an insurer against accidents that may occur on its highways. (*Gray v. State* (1954), 21 Ill. Ct. Cl. 521.) The State however, has a duty to maintain its highways in a reasonably safe condition for the purposes for which they are intended. (*Blair v. State* (1994), 47 Ill. Ct. Cl. 108.) The State has a duty to maintain its highways so that defective and dangerous conditions do not exist. (*Moldenhaver v. State* (1984), 32 Ill. Ct. Cl. 514.) Where

a dangerous condition exists and a person using the highway is injured, the Claimant must prove by a preponderance of the evidence that the dangerous condition existed and that the State had actual or constructive notice of the condition. *Scroggins v. State* (1991), 43 Ill. Ct. Cl. 225, 227.

In this case there is no complaint or report of the defect which would give the State actual notice. As such, we must consider the facts of this case as presented to determine whether or not the State had constructive notice. (*Stills v. State* (1989), 41 Ill. Ct. Cl. 60, 62.) The Court has consistently held that for a recovery as a result of injury suffered in a road case, the defect must be substantial enough and must have existed for a sufficient length of time that reasonable persons would conclude that immediate repairs should be made or warning signs posted. *Immordino v. State* (1995), 47 Ill. Ct. Cl. 78, 80; *Stege v. State* (1972), 27 Ill. Ct. Cl. 399, 403.

The photographic evidence in this case accurately represents the scene on the day of the accident. It depicts a cement roadway with a large area that has been repaired with asphalt. The varying coloration of the asphalt repair work indicates that the work was done on at least two occasions in the opinion of the IDOT employee Chlebicki. There was no evidence to indicate when, by whom, or how the patching was done. The pictures clearly indicate that both the near and far portions of the patched area have broken away leaving two deteriorating areas. Although there is no specific evidence as to the actual size of the potholes, the pothole located at the far end of the patched area appears to be of significant size. Further, the testimony of the Claimant's husband was that they struck a "huge" hole that resulted in the startling impact in question. In addition, as previously indicated,

Krause confirmed the testimony of the Claimant and her husband that a "very bad pothole" existed at the location of the incident in 1992 and 1993.

IDOT employee, Chlebicki testified that potholes can appear over the course of a weekend and the Respondent urges the Court to conclude that is what happened in this case. However, an examination of the photos and consideration of the testimony of the witnesses do not support that conclusion. It is unlikely that both ends of a patched highway would simultaneously disintegrate over the course of one weekend. Further, there is no evidence that the October weather conditions were such that substantial holes would result in such a rapid fashion.

The evidence does support Claimant's contention that the potholes were substantial defects and had existed for a significant length of time so as to constitute constructive notice to IDOT, as the Stevenson Yard was only two miles from the scene of the incident.

Therefore, we find liability for the Claimant and against the State. Considering that Claimant's medical bills total $23,509.90 and her lost wages of $3,263.43, we hereby award her $100,000.