(No. 4870—

John Sisco, Claimant, vs. State of Illinois, Respondent.

*Opinion filed March 29, 1963.*

Lloyd H. Melton and Harold B. Culley, Jr., Attorneys for Claimant.

William G. Clark, Attorney General; William H. South, Assistant Attorney General, for Respondent.

Perlin, C. J.

Claimant, John Sisco, seeks recovery for injuries received in an automobile accident, which occurred Saturday, May 3, 1958, on Illinois Highway Route No. 1, about 6 miles north of Cave-in-Rock, when the automobile driven by claimant struck a hole in the pavement, bounced over the center line, and collided with a car coming from the opposite direction in the other lane of traffic. The passenger riding in claimant's car was killed.

It is agreed that claimant was injured, and that he was taken to the Hardin County Hospital at Rosiclare, Illinois, and remained there for 68 days. He was subsequently taken to the Veteran's Hospital in Marion, Illinois, where he remained from July 11, 1958 until June 27, 1959, after which he was taken to the Veteran's Hospital in St. Louis, where he remained for approximately two months. Claimant presented evidence that, during the period of hospitalization, he was almost completely immobilized, and that at one time he was in a total cast except for his left knee and left shoulder. At the time of the trial, two years after the accident, he could not walk without crutches.

The evidence shows that claimant was 37 years old at the time of the accident; that he went to the 11th grade in school; that he had no special training for office work and the like; and that, after serving in the armed forces, the only work he did was at the Caterpiller plant in Peoria, Illinois, where he was a steam boot operator, engaged in the job of cleaning off motors. Because of the injuries incurred by claimant, he will not hereafter be capable of performing work of this character.

The issues raised in this case are (1) whether respondent was negligent, and, (2) whether claimant was free from contributory negligence.

Claimant testified as follows: He had left Peoria, Illinois about 10:00 P.M. He had worked his normal shift, and left on his trip immediately thereafter, picking up his 70 year-old landlady. He had about ten to twelve hours of sleep the previous night, and was in good physical condition. He stopped twice to put gas in the car en route to his home in Elizabethtown, Illinois. He made this trip about once a month, always using the same route.

He carried lunch and coffee with him, had nothing to eat or drink at any commercial establishment, and did not have any alcoholic liquor in the car. His car was a 1938 Chevrolet in good condition with good brakes. He had everything checked the day before he left. His tires were about a month old. At about 6:30 A.M. he was traveling south on Illinois Route No. 1 at about 40 or 50 miles per hour, at which time he struck a hole in the road, the right front tire blew out, and his car veered to the left over into the lane of on-coming traffic, and collided with another automobile. His car turned over as a result of the collision, and was almost completely demolished, and his passenger was killed. His hands did not come off the wheel at any time, and he did not lose control of the car. His car did not skid before the collision. He put his brakes on, but was immediately hit. He did not see the hole before the accident, nor has he seen it since, but he did feel it when his right front wheel ran down in it. There were no signs warning of the hole, although there was a "curve sign" about 500 feet before the hole. Claimant said he decreased his speed when he saw the "curve sign."

Claimant presented five witnesses, who were familiar with the particular stretch of highway where the accident had occurred. They stated the hole was about 12 to 18 inches wide, 12 to 14 inches long, and 4 to 8 inches deep in the center. Gary Austin, a milk truck driver, who traveled that section of Route No. 1 six or seven days per week, said the hole had been there for about three weeks, and he had hit it occasionally. He further testified that, when he hit the hole, there was a violent reaction to the steering of his vehicle, and it caused his vehicle to swerve one way or the other, and that it was deep enough that "if you run off in it, your tires would go clear down in it." Mr. Austin also said that the hole

was not readily apparent, and "you would almost have to know it was there, or be looking for it, before you could see it."

Mr. Edson Jarrells, who drove over the road daily, said that he had occasionally hit the hole, and it was not readily apparent from a great distance, and "you would hit it, if you didn't know it was there." He testified the hole had been there about three weeks to two months. He noticed that the hole had been fixed, but that in a short time the blacktop had worked loose, and had come out again.

Randall Oxford testified that the last time he hit the hole was about a week before the accident. It had a violent reaction upon his vehicle, and there was a jerking on the steering wheel when he hit it. He usually traveled from 40 to 50 miles per hour down that highway.

James Mathis also testified that this was not a hole one would readily see in traveling down the road, and that the hole had been there two months or longer.

Respondent presented two witnesses, who had been working for the State Highway Department at the time of the accident. John Angleton, an employee in the Highway Department, said that he had filled the hole in question about 5 days previous to the accident, and that it had been patched at least four times before the accident, since the water was coming from "underground somewhere", and working the blacktop out.

Mr. Bert Scott, the sectionman for the section of the highway in question at the time of the accident, testified that, because of the water pressure in the hole, it was harder to make the blacktop stick; there was no sign of any kind along the road that would indicate that there was a hole in the road; that the hole had been "breaking out there some three or four weeks"; that he

had repaired it at different times, and that it did not stay repaired "too long."

Respondent contends that claimant was not free from contributory negligence, since it should be inferred that the right front tire on claimant's car was substantially defective. This contention is without merit. Nowhere is evidence presented that the tire was defective. On the contrary, since the tire was only one month old, the inference might be that it was not defective. That the hole did not cause other cars to have blow-outs has no bearing on the instant case.

The evidence indicated that the hole was not readily discernible before it was hit, and that striking it did cause a violent reaction to many of the cars driving through it.

That respondent had actual notice of the defective area is undisputed, and substantiated by respondent's own employees, who testified that they had known of the condition of the highway for at least three to four weeks, and that its frequent attempted repair was insufficient. There is also no dispute about the fact that there were no signs warning of this hole.

In *Mitchell* vs. *State of Illinois*, No. 4872, claimant recovered for damages to his automobile caused by driving over a hole in the highway. Although there was no evidence that the State had actual knowledge of the hole, the Court held that it had either actual or constructive knowledge, since the highway had been in a generally defective condition for a considerable length of time, and there were no warning signs, barricades or any warning whatsoever advising the traveling public of the break in the highway. In awarding the recovery, the Court stated:

"We are mindful of the fact that we have held several times that respondent is not an insurer of all people traveling upon its highways, but

it does have an obligation to keep its highways in a reasonably safe condition for motorists traveling over them, and, if the highways are in a dangerously defective condition, which might be hazardous to the traveling public, then the respondent is obligated to erect barriers or warning signs warning the people traveling over said highway of any dangerous or defective condition."

Since respondent in the instant case had ample actual notice that the hole existed, and that attempted repair by blacktopping was ineffective, it must be deemed negligent in not effectively correcting the condition, and in not erecting warning signs or barriers near the hole. The record indicates claimant to have been free from contributory negligence, and he apparently exercised due care for his safety.

In the opinion of this Court, respondent's negligence was the proximate cause of the accident. There has been no evidence adduced to indicate any negligence on the part of the vehicle with which claimant collided.

Claimant's injuries are patently severe. The evidence established that he will never be able to walk normally again, and that he is incapacitated from doing physical or manual work in the future. He has had no training for other types of work, although the doctor testified that even work done sitting at a desk could only be accomplished for short periods of time. The amount of medical costs, including the Veteran's Hospital bills of $10,789.20, is indicative of the severity of claimant's injuries. It is fortunate that claimant was entitled to receive, without cost, the medical services of the Veterans' Administration.

This Court, therefore, awards John Sisco the sum of $20,000.00.