WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

PER CURIAM.

(Nos. 5137 and 5144—
Consolidated

BOBBY C. and MARY CLARK, DELLA MAE CLARK, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed July 29, 1974.*

HARRIS & LAMBERT, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

BURKS, J.

The three claimants in these consolidated claims seek damages for personal injuries allegedly caused by respondent's negligence in failing to keep the weeds mowed on the shoulder of a highway; in allowing a concrete culvert on the shoulder to be obscured from view by weeds growing up around it; and in failing to provide any warning of this alleged dangerous condition.

All three claimants were injured in the same accident. They were riding in the front seat of a car, owned

and driven by Bobby Clark, when the right front tire blew out. The car, after pulling off the paved highway onto the shoulder, struck the foot high concrete culvert, which claimants contend was unmarked and covered by weeds.

Sitting next to the driver, Bobby Clark, was his wife, Mary, and to her right was Mary's sister, Della Clark. About midday on July 17, 1963, they were driving north on Route 148, a 2-lane paved highway with wide shoulders. When they were about a mile and a half south of Christopher, traveling at a speed of 55 to 60 MPH, the right front tire blew out. It made a loud noise like a gun going off. The driver, Bobby, said he "slowed down gradually, put on the brake and dropped the car off the pavement onto the shoulder". The shoulder was over 8 feet wide, fairly level with the roadway, and Bobby said he didn't see anything but high grass on the shoulder. He was still traveling at a speed of 40 MPH when he hit the culvert, which was approximately 250 feet from the point of the blowout.

Bobby, the driver, said he did not see the culvert, because of the weeds, until he was about a car's length from it and, at that point, he was not able to turn his car in any manner to avoid it.

The concrete culvert, running parallel to the highway, was 10 feet long, 7 inches wide, and one foot high at the end struck by claimant's car. The culvert was set back 8 feet 5 inches from the edge of the pavement on the outer edge of the shoulder, a set-back distance of nearly 3 feet more than the width of a passenger car. Bobby said his car, a '59 Buick, struck the culvert headwall about a foot inside the right front wheel. This means that the right side of claimants' car was about 10 feet off the edge of the pavement, and the left side about 4 feet off the

pavement. The car struck the headwall with such force, that it ended up "straddle the culvert". The car was a total wreck, and all three passengers suffered personal injuries.

The position of claimants' car at impact indicates that it narrowly missed running off the shoulder and plunging into a drainage ditch which runs parallel to the shoulder and culvert. The ditch is plainly visible in claimants' photo exhibits. The accident occurred in bright daylight, about noon, on a warm, clear, dry day.

Respondent contends that the proximate cause of this accident was the apparent failure of the driver, Bobby Clark, to keep his car under control after the tire blew out. Respondent also denies that anything it did, nor failed to do, contributed in any way to the accident.

The court finds that the preponderance of the evidence supports the respondent's position on both issues.

First, we find that the weight of the evidence fails to confirm claimants' major premise that the culvert was obscured from view by high grass and weeds. All of claimants' photo exhibits show the headwall of the culvert to be plainly visible from a reasonable distance. There is some uncertainty in the record as to exactly when the photos were taken and as to whether the photos show the condition of the culvert substantially the same as it appeared at the time of the accident. Testimony of claimants' witnesses is conflicting on this point. It is certain that the pictures were taken a day or more after the accident and before the grass was cut around the culvert.

Claimants introduced eight photo exhibits showing the culvert, the grass, and the weeds as claimants viewed the area from their approach. Claimant, Bobby Clark

said that two of the pictures were taken by him and the other six were taken by his brother several days later. When counsel for the claimants showed Bobby the photos marked as claimants' exhibits A-1 through A-8, we find the following questions and answers in the record:

Q Do those photographs correctly show the condition of the culvert, and the surrounding area at the time of the accident?

A [Bobby Clark] Yes sir.

Q Is the condition of the grass and the weeds, as shown in that picture, as it was on the occasion of the accident?

A [Bobby Clark] I think they'd mowed the right-of-way off, but the culvert still hadn't been cleaned up at the time these pictures were taken.

The court, examining the same photos, and accepting Bobby Clark's testimony that the culvert had not been cleaned up when the photos were taken, finds that the culvert was clearly visible at the time of the accident. It was certainly not hidden by the weeds at the end facing claimants' on-coming car. The entire 10 feet top is also visible. Although the photos show the weeds are as high as the culvert in the middle facing the highway, where the culvert is only 7 inches high, this is not the portion claimants would have seen when approaching the culvert on the shoulder. Claimants' car struck the south end of the 12 inch high culvert which claimants' photos show was plainly visible from a reasonable distance. Bobby Clark, the driver, said these photos "correctly show the condition of the culvert at the time of the accident". We emphasize that this statement, corroborated by several of claimants' witnesses, and accepted by the court, is factual, totally contradicts claimants'

main contention that their view of the culvert was obscured by weeds until they were just a car's length from it.

We have carefully considered the testimony of claimants' seven witnesses, who viewed the culvert after the accident, and find a profusion of contradictions as to what they saw. All of them saw high grass and weeds around the culvert. Raymond Marks, Lester Simpson, and Grover Whiteside said that the culvert was completely concealed by the weeds. Others agreed with Bobby Clark's statement that claimants' photos correctly show the condition of the culvert at the time of the accident.

Three of claimants' witnesses, Bill Marks, Robert Gene Lindsay, and George Linsley, friends of the Clarks, after visiting Bobby, Mary, and Della in the Miners Hospital in Christopher, went out to view the scene of the accident. These witnesses went there about midnight after the accident had occurred about noon that day. They had a flashlight when they viewed the culvert. Bill Marks was asked the following question and gave the following answer:

Q I show you petitioner's exhibits A-1 to A-8, being the photographs of the culvert, and ask you if the weed condition shown there is the same as you saw it that night?

A [Bill Marks] Well, pretty much the same.

George Linsley seemed to contradict the above statement by his testimony that you couldn't see the culvert unless you were "right on it". Then, on cross examination, he gave the following answers:

Q How far back could you see the culvert?

A Well, from where he run off the road he couldn't see it at all.

Q Where did he run off the road?

A It was farther back.

Q How far back?

A I don't know how far.

Q You don't know whether he could have seen it in an automobile when he was 100 feet, or 200 feet back from it?

A No, I don't know exactly how far.

Henry Linsley, who went out to see the culvert on the next day after the accident, gave a completely different description from that of the other witnesses. He said, "Coming straight at the culvert from either end, the culvert was concealed, but from the middle of it you could see it".

Claimants' photos show just the opposite to be true. The culvert was concealed in the middle but both ends and the top were clearly visible.

Based on claimants' photo exhibits and the weight of the evidence, the court is impelled to conclude that the culvert was not obscured from claimants' view and was clearly visible from a reasonable distance.

We turn now to the unrefuted testimony of respondent's key witness which we believe further absolves respondent from any charge of negligence in connection with claimants' unfortunate accident.

Victor Yung, State Highway Maintenance Foreman for the section in which the accident occurred, conceded that the last time the weeds were mowed along this

particular stretch was 26 days prior to the accident. He said that this was in accordance with his mowing schedule or "pattern" of cutting the shoulders three times a year, during the growing season, with the mowing machines being followed by "brier hookers" who clean out the weeds around the headwalls of the culverts and the 4"×4" warning posts placed at the end of all culverts.

Mr. Yung said there were ten similar culverts within this particular 5-mile stretch from Ziegler to Christopher and that all of the headwalls, including the culvert struck by claimants' car, were marked with a 4" × 4" warning post which stood 30" high with a reflector attached.

The maintenance foreman said that he inspects this section of highway every other day, and that "I watch when I go down the road to see that these 4 × 4's are up". He was positive that a 4 × 4 warning post was in place at the culvert in question on the date of the accident. He said that on the day after the accident, he stopped at this culvert and found that the 4 × 4 post had been broken off and was laying right down there at the corner of this headwall. The statement finds support in claimants' photo exhibits A-3, A-4, and A-7 which clearly show the stump of a post at the end of the headwall, as Mr. Yung pointed out when he was shown these photos at the hearing. The court also takes notice that claimants' exhibit A-1 shows a warning post standing at the culvert on the opposite side of the highway, facing southbound traffic, just across the highway from the culvert in question. This fact tends to support Mr. Yung's statement that "there is a 4 × 4 warning post at all those culvert headwalls", including the one that claimants' hit. Mr. Yung stated flatly that whoever hit this particular culvert on the day of claimants' accident broke off the 4 × 4 warning post. He said that it could not have been broken

off the day before, because he had inspected the culverts that day and no warning posts were missing.

At least one conclusion seems obvious from Mr. Yung's testimony. Even if the 4 × 4 warning post had been mysteriously broken off before claimants' hit the culvert, respondent had no knowledge or notice that this might have occurred.

Claimants argue that, "with knowledge that weeds grow pretty fast, the State was on notice that the culvert would be hidden from view of a passing motorist". Although we have held that this culvert was not hidden from view at the time of this accident, we assume that the knowledge of such a possibility occurring, was one reason for the State erected the 30″ high 4 × 4 warning posts at all such culverts on this section of highway.

Claimants call our attention to *Hammond* v. *State,* 24 C.C.R. 368 (1963), as being similar to the case at bar. In the *Hammond* case, we held the State guilty of negligence in failing to place a warning post or sign where it had removed the headwall of a culvert on the shoulder of a highway, leaving the remaining portion of the culvert and ditch invisible to users of the shoulder. The case at bar differs from *Hammond* in that neither the culvert nor the ditch were invisible. Both were clearly visible in claimants' photo exhibits. But a more important distinction in *Hammond*, is the essential fact of adequate notice to the State that a dangerous condition existed on its highway. In *Hammond*, we said at page 368: "The State had *adequate notice* of the defect, and its plans called for a warning post to be in place at the scene of the injury, since at least the preceding April." There the accident occurred in October, some six months after the State had *actual notice* of the dangerous condition and still failed to put up a warning post.

Similarly, in *Welsh* v. *State*, 25 C.C.R. 270 (1966), cited by claimants, we held the State guilty of negligence for permitting the existence of a big hole, 7 feet wide and 3 feet deep, in the shoulder of a highway. The hole was just 2.5 feet from the pavement, completely covered by weeds which had not been mowed for over two months, and there was no sign or warning posted. The State had adequate *constructive notice* of this dangerous condition and totally failed to take appropriate remedial measures.

The crux of the *Hammond* and *Welsh* cases, and all similar cases in which we have found the State guilty of negligence, was that the State permitted a dangerous condition to exist without any warning to the public for an unreasonable period of time, after having actual or constructive notice of the danger. In *Pyle* v. *State, No. 5343, filed November 19, 1973,* we reviewed a large body of case law from our own and other jurisdictions in which the notice requirement rule was applied in tort actions against various governmental entities.

In the case at bar, the evidence fails to establish any of the three essential elements of proof required to support a finding that the respondent was negligent in this case.

First, claimants' charge that the culvert was hidden by weeds was refuted by claimants' own photo exhibits showing the headwall of the culvert clearly visible. Moreover, this culvert was located at the outer edge of the shoulder, 8 feet 5 inches from the pavement, adjacent to a drainage ditch which is also plainly visible in claimants' photos. Under these circumstances, the culvert could hardly be called a dangerous hazard to a careful motorist who might pull off onto this broad shoulder in bright daylight.

Secondly, claimants charge that there was no warning of what claimants call a dangerous condition, was not established by the evidence. Respondent's witness testified that there was a 4 × 4 warning post 30″ high at the end of the culvert, facing oncoming traffic, with a reflector on it. The reflector, obviously, was to make the post more visible at night, and call a motorist's attention to the location of the culvert and the outer edge of the shoulder. In bright daylight, when this accident occurred, a warning post would apparently serve no useful purpose unless the culvert and the edge of the shoulder were, in fact, invisible because of weeds. Claimants' photos show that this was not a fact. Nevertheless, the only evidence in the record suggesting that the warning post at this particular culvert was not standing, and might have been broken off prior to the accident, was a general statement by two passengers in the car. Bobby Clark said that, "when I started for the shoulder, I didn't see anything but high grass along the shoulder". Della Clark said that she "saw nothing on the shoulder except the weeds". The other passenger in the car, Mary Clark, could not remember anything that she saw or might have seen prior to the accident.

Claimants do not deny respondent's evidence that there are numerous culverts on this stretch of highway; that all of the other culverts have warning posts standing; that the highway maintenance supervisor saw the warning post at this particular culvert in place on the day before the accident; nor do they deny that claimants' photos show the stump of a post broken off at the culvert after the accident.

Finally, even if a warning post at this culvert were deemed necessary in daytime, and if it had been broken off prior to the accident, there is no evidence that the

State had any prior notice of such a situation. There is unrefuted evidence that the warning post was in place on the day before the accident. As we said in the *Pyle* case (Supra), the State is not guilty of negligence unless it has reasonable notice of a dangerous condition and fails to warn the motoring public. Here, we find that the evidence not only fails to prove the alleged dangerous condition at the culvert, even in the absence of a warning post, but does not even suggest that the State had any prior notice that the warning post at the culvert was broken off.

It is apparent from the evidence, that the proximate cause of claimants' accident was the driver's failure to keep his car under control after a front tire blew out while the car was traveling at a speed of 55 to 60 M.P.H. Claimants' state in their brief that the driver did not panic, but slowed down gradually, applied his brake, and headed for the shoulder. Yet, he was still traveling at a speed of 40 MPH when his car hit the culvert which was 250 feet from the point of the blow out. This indicates that the car's speed was over 40 MPH when it left the pavement. The blowout did not cause the car to swerve onto the shoulder. Claimant said he "headed" for the shoulder at a speed of over 40 MPH. The court takes notice that experts in safe and careful driving advise that, in case of a blowout, a driver should not turn on to the shoulder of the road until the car is almost stopped.*

We are further led to believe, that the driver failed to keep his car under control by the position of the car at impact. Although he was on a big wide shoulder, his car was about to run off the outer edge of the shoulder and plunge into the drainage ditch when it hit the culvert. There was ample room on the shoulder for the car to pass

---

*Rules of the Road*, "Blowouts" page 37, Michael J. Howlett, Secretary of State.

between the culvert and the pavement, yet the left side of claimants' car was 4 feet from the pavement when it struck the culvert.

Just why the driver failed to see the culvert in bright daylight until he was just a car's length from it, we do not know. We can only surmise that, in the excitement of the moments following the blowout, he simply failed to notice it. As we said in *McAbbe v. State, 24 C.C.R 374,* "A person will not be excused, who testifies that he looked and did not see".

Claimants contend in their brief that, "even if the court finds the driver, Bobby Clark, guilty of contributory negligence, that negligence cannot be imputed to his passengers, Della Clark and Mary Clark". We accept the rule, well supported by the authorities cited in claimants' brief, that "the negligence of a driver cannot be imputed to a passenger". But neither can it be imputed to the State. Since we have found the respondent to be free from any negligence in connection with this unfortunate accident, the claim of all three claimants in this action must be denied.

Claims No. 5137 and No. 5144, consolidated, are herewith denied and dismissed.