(No. 84-CC-0226—)

ROBERT BAKER and CAROL BAKER, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 28, 1989.*

SORLING, NORTHRUP, HANNA, CULLEN & COCHRAN, LTD. (PATRICK V. REILLY, of counsel), for Claimants.

NEIL F. HARTIGAN, Attorney General (CLAIRE GIBSON, Assistant Attorney General, of counsel), for Respondent.

Montana, C.J.

This claim arises out of a motorcycle accident which occurred on August 7, 1981, involving Claimant Robert Baker. Mr. Baker alleges Respondent was negligent in its care and maintenance of the exit ramp on Interstate 70 near Route 51 in Fayette County, Illinois, in that it allowed objects to accumulate on the exit ramp and that he was injured as a direct result of this negligence. Claimant Carol Baker, who was at that time the wife of Robert Baker, seeks compensation for loss of consortium.

The evidence in the case consists of the following: a joint stipulation filed October 2, 1985, a joint stipulation of September 19, 1985, labeled Joint Exhibit 1, transcript of proceedings of September 19, 1985, before the Commissioner, the deposition of Robert Baker taken

September 12, 1985, the deposition of Dalton Alexander taken November 13, 1984, the deposition of Norman Hagy taken November 13, 1984, Claimant's Exhibit A dated September 19, 1985, Claimant's Exhibit A-1 dated September 9, 1985, and Exhibit B (five pictures).

The Claimants waived the right to file a brief and notified the Commissioner that they would also not file a reply brief. Respondent has filed a brief and the Commissioner has duly filed his report.

The parties have stipulated in Joint Exhibit 1 that on August 7, 1981, Robert Baker had a one vehicle accident on the Interstate Route 70 exit ramp, eastbound onto U.S. Route 51 in Fayette County, Illinois. The State of Illinois was responsible for the maintenance of this particular roadway. Robert Baker was injured in the accident and received treatment at several hospitals. The hospital bills have all been paid by a collateral source. Robert Baker was married to Carol Baker at the time of the accident, but they divorced approximately four months after the accident.

The parties also stipulated that Robert Baker received an open shaft fracture of his right femur. He had surgery in September of 1981. A Kuntscher rod was placed into the right femoral shaft for fixation. The fracture healed. In 1983 the rod was removed. He also had injuries to his left ankle, left thigh, abrasions on the chest and right flank, burn abrasions of the right shoulder, deep lacerations of the elbow, a dislocation of the first metacarpal joint and dislocation of the trapezium bone of the left hand and lacerations and a deep penetrating wound of the left thigh. He required substantial medical treatment, including surgery. Mr. Baker had considerable pain and was unemployable at the time he was discharged from the hospital on

September 28, 1981. Exhibits A and A1 indicate the extensive medical treatments and billings.

Mr. Baker's testimony indicates he had driven the motorcycle from Missouri and had been riding for about two hours before the accident. He had driven this motorcycle before and had some experience riding other motorcycles. His friends were about 150 yards behind him in a car. As he approached the ramp it was clear. As he got into the curve, he saw gravel from the left side to the right side and it was very thick all over the roadway. It was not in mounds, but was thick enough to cover the roadway completely. He was only five feet away from the gravel when he saw it. He was in the center of the road and was only going 30 miles per hour. As soon as he hit the gravel the back tire skidded as he tried to slow down. He lost control and started going left off the road. He did not lose consciousness, but remembers little else. He does remember the gravel was grayish as if it was dirty and had been there for some time.

As to his injuries, Mr. Baker testified he had a broken right femur where a steel rod was inserted from the hip to the kneecap, a left thumb that had been turned completely around, two deep lacerations on each thigh where muscle was removed, an exposed elbow, and a badly sprained left ankle. He still had pain in the legs, hip and thumb as of September of 1985. After the accident, he was on crutches for six months. He was out of work for about 15 months and received unemployment or disability payments for only 26 weeks during that time. The payments were $120 per week. The Army and Blue Cross/Blue Shield paid all of his medical bills.

Mr. Baker also testified that Claimant Carol Baker

had refused to pick him up from the hospital and only visited him once in the hospital to tell him she was starting divorce procedures.

Norman Hagy testified he worked for the Department of Transportation (DOT) in August of 1981. He was a lead worker in Fayette County, Illinois. Part of his job was road patrol and debris cleanup to see that no debris is on a highway. If there was debris that he saw, he would have it removed. He drove the exit ramp in question on almost a daily basis in August of 1981. Some days he would drive over the ramp four or five times. He was aware of no reports of debris on the exit ramp in August of 1981. He did identify what possibly could be rock off the roadway in some of the pictures.

Dalton Alexander testified that he too worked for DOT in August of 1981. His work was exactly like Mr. Hagy's work. As part of his work he oversaw road patrol and cleanup on the exit ramp in issue in this case. He drove the ramp up to six times a day. If he had seen crushed rock on the ramp, he would have called a crew in to get it off. He had seen rock on the different roadways he patrolled which had fallen out of trucks or been knocked on the roadway from accidents. He would remove crushed rock from the shoulder if he saw it. He does not remember ever sweeping any crushed rock off this exit ramp.

The four pictures known as Exhibit B show the exit ramp in question. There appears to be some rock off the roadway and at the far end of the shoulder and onto the grass. The roadway appears clear. The parties stipulated that these pictures show the exit ramp in substantially the same condition as on the date of the accident.

The State of Illinois is not an insurer of the condition

of its highways under its maintenance and control, but it does have a duty to use reasonable care in maintaining roads under its control. (*Ohms v. State* (1975), 30 Ill. Ct. Cl. 410.) The exercise of reasonable care requires the State to keep its highways reasonably safe. It is the duty of the State to maintain its highways so that defective and dangerous conditions likely to injure persons lawfully on the highways shall not exist. (*Moldenhauer v. State* (1978), 32 Ill. Ct. Cl. 514.) To be in a dangerously defective condition, the highway must be in a condition unfit for the purpose it was intended. (*Allen v. State* (1984), 36 Ill. Ct. Cl. 24.) To be held liable for negligence, the State must have actual or constructive notice of a dangerous condition and permit the dangerous condition to exist without warning to the motoring public. *Clark v. State* (1974), 30 Ill. Ct. Cl. 32.

A case similar to this one is *Wagner v. State* (1978), 32 Ill. Ct. Cl. 50. In *Wagner*, an experienced motorcycle driver was killed in an accident on an exit ramp. The Claimant alleged that the State was negligent for allowing gravel to accumulate on the exit ramp which caused the accident. The police officer at the scene observed a significant amount of gravel on the ramp. In the present case, there is an issue as to whether there ever was any gravel on the ramp. The Court in *Wagner* found an absence of proof as to how long the gravel had been there, so there was no evidence upon which to charge the State with notice of its existence. The case at bar is devoid of any evidence that the State had notice of any allegedly dangerous condition of debris on the roadway. In fact, two witnesses who traveled the exit ramp on a daily basis looking for debris could not remember any.

Since it has not been shown that the State had actual

116

or constructive notice of any debris on the exit ramp, if in fact there was any, we find that with regard to Robert Baker this claim must be denied. We further find Carol Baker's count for loss of consortium must also be denied.

Based on the foregoing, it is hereby ordered that this claim be, and is hereby denied.