(No. 84-CC-1693— )

ROBERT LYNN LOVSEY, SR., Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 21, 1995.*

WISEMAN, SHAIKEWITZ, MCGIVERN, WAHL, FLAVIN & HESI, P.C. (SAMUEL A. MORMINO, JR., of counsel), for Claimant.

JIM RYAN, Attorney General (THOMAS S. GRAY, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This claim arises out of a motorcycle accident which occurred on May 23, 1983, involving Claimant, Robert Lynn Lovsey, Sr. Mr. Lovsey alleges Respondent was negligent in its care and maintenance of the Williamson Road in Madison County, Illinois, in that his motorcycle struck a bump and a metal rod in the roadway, resulting in injury to Claimant.

The parties have stipulated that the road in question was under the jurisdiction of the State of Illinois Department of Transportation. Additionally, plaintiff's group exhibit #1 was admitted by stipulation as being Claimant's medical bills incurred as a proximate result of the injuries he sustained in the accident in the amount of $13,488.74.

Claimant testified that he was headed east with another cyclist, Ray Royer, who was behind him. The pair was riding in a staggered fashion with Claimant's motorcycle closest to the centerline of the road. The Claimant testified that he observed patchwork in the roadway or possibly a pothole in front of him, so he moved his motorcycle

closer to the centerline. When Claimant's motorcycle went over the patchwork, the front end of his motorcycle "started going real squirrelly and shaking and everything," with subsequent loss of control and the resulting injuries. Claimant contends he was going about 40 miles per hour as he approached the patchwork and had previously been going about 50 m.p.h. The weather was dry and clear and the roadway was straight. It was about 4:50 p.m. at the time the incident occurred.

Claimant testified that after he was released from the hospital, he went back to the scene and took photographs of a piece of steel protruding from the roadway. Claimant and his wife testified that they had been informed of the existence of the piece of steel which purportedly caused the accident by Claimant's friend Ray Royer. Claimant made identifying marks on the photographs of the area where the accident occurred. The photographs were admitted into evidence. Claimant contends he did not see the steel because "it kind of blended in with the patch." The photographs introduced into evidence show a patched area which is clearly visible. The steel is far more difficult to discern. Claimant's friend, Mr. Royer, attempted to move the steel when he and Claimant visited the site some two weeks after the accident. The steel was immovable as it was imbedded in the concrete of the roadway.

Claimant stated on cross-examination that he was familiar with Williamson Road and had driven upon it once or twice a week without having previously seen the steel protruding from the road. He did not see the steel in the roadway on the day of the accident and was attempting to avoid a pothole in the patched area when he lost control of his motorcycle. Claimant's assertions that the steel in the roadway caused his accident was based upon Mr. Royer's observations after the accident.

Royer testified he was riding his motorcycle behind the Claimant at the time of the accident. Royer was 20 or 30 feet behind the Claimant in a staggered fashion. Royer noticed Claimant's motorcycle wobbling and shaking and observed Claimant's motorcycle start "flipping over." Royer testified they were traveling at the speed limit. Royer stated that he and the Claimant had slowed down as they approached the patched area in the highway.

Royer returned to the scene of the accident two days later to see what had caused the accident and he found the piece of steel sticking out of the patchwork. Royer identified the photograph marked as plaintiff's exhibit #2 as showing and portraying the piece of metal as he saw it when he went to the accident scene two days after the accident. He tried to dislodge the steel but he said "there was no dislodging it from where it was." Royer stated that the metal looked like a railroad rail.

Royer admitted on cross-examination that on the date of the accident he did not know what had caused the problem leading to the accident. Royer testified on cross-examination that he recalled the steel sticking above the traveled portion of the roadway about an inch-and-a-half.

Michael Weber, an employee of the Illinois Department of Transportation testified that he was in charge of the maintenance of the section of Williamson Road where the accident occurred. Weber routinely inspected the road. Weber did not observe a piece of steel and had no record of receiving any complaints regarding the area. Weber produced plans that showed that there was steel in the roadway upon its construction in 1937. The steel included a flange laid in the cement one-half inch below the surface of the roadway which secured one-half rebar every two and one-half feet. After the accident in August of 1983, there was additional work done as a result of

highway deterioration that occurred in the location of the accident. Weber had no recollection or knowledge of any steel sticking out of the highway at the time of the August, 1983, repairs.

There is no question that the Claimant was seriously injured and sustained substantial medical expense. His injuries included a right collar bone fracture, left shoulder separation, several broken ribs, broken right hand, large contusions and a gouge in his leg. The Claimant sustained collapsed lungs as a result of the chest injuries sustained. Claimant was in intensive care for ten days. Claimant testified that he has continuing pain and disabilities and loss of sleep.

At the time of the accident, Claimant was laid off at his job at Laclede's Steel and was not recalled until the fall of 1983. Claimant did not lose employment as a result of his injuries. Claimant's total medical bills as a result of his injuries were stipulated to be $13,488.74, and there is a public aid lien to the extent of $4,022.74 against any award that may be made to the Claimant.

Both parties submitted post-hearing briefs. Claimant has the burden of proving each of the following propositions:

1. That the Respondent was negligent;

2. That the Respondent's negligence was the proximate cause of Claimant's injuries;

3. That Claimant had actual or constructive notice of a dangerous condition;

4. Damages.

Claimant first contends that the patchwork at the scene of the accident establishes that the roadway was deteriorated, and that at some point in the deterioration the

steel was allowed to sink into the roadway and protrude from the surrounding concrete. Claimant contends that the existence of a patch in the area where the steel protruded from the concrete establishes that the State had notice of the dangerous condition, and that the repairs that were attempted (i.e. patching) were ineffective. Claimant argues that the State has a duty to maintain its highways in a reasonably safe condition and a duty to the public to warn of a danger that exists which could not be discovered by the public. (*Robertson v. State* (1983), 35 Ill. Ct. Cl. 643.) Further, the duty of the State includes the obligation to perform maintenance and effectively remedy dangers, and to refrain from ineffective remedies. (*Sisco v. State* (1963), 24 Ill. Ct. Cl. 306; *Robertson, supra.*) Claimant further contends that when a dangerous condition exists the State has a duty to warn members of the general public, citing *Sisco* and *Robertson, supra.*

As to the issue of proximate cause, Claimant argues that both Claimant and his friend, Royer, testified that Claimant's motorcycle went out of control as it passed over the patchwork area on Williamson Road. It is not disputed that all of Claimant's injuries were related to the accident which resulted when his motorcycle went out of control after crossing the patched area. Claimant contends that it was a sunny day and the road was level and clear without visible surface debris. There was evidence that the motorcycle was in good condition and that the tires of the motorcycle were not damaged in the accident. The evidence sustained a conclusion that Claimant had experience as a motorcycle operator. Finally, Claimant suggests that the State offered no alternative theory of causation.

Respondent contends that the Claimant's proof failed to demonstrate that the piece of steel in the road

was the cause of his injuries, and failed to prove that the State had actual or constructive knowledge of any dangerous condition regarding the road prior to the incident. Claimant was familiar with the road and had not seen any metal sticking out of the road previously. Claimant did not see the metal prior to the accident. Respondent contends that the Claimant only assumes that he struck the steel and Claimant's testimony that the steel caused the accident is mere speculation. Respondent points to the fact that the Claimant's motorcycle tires remained inflated and undamaged after the accident. Respondent argues that there is no direct proof that the metal in the roadway or any other factor was the cause of the accident and concludes that the Claimant is asking the Court "to take a blind leap of faith" on the issue of proximate cause.

Respondent contends that all the evidence in the case indicated that neither the Claimant nor any agent of the Respondent ever saw or had noticed the metal objects imbedded in the road before this incident. State inspectors did not observe any scrap metal protruding from the road. There was no proof of complaints regarding the condition during the relevant time period.

Claimant replies that it is not disputed that he lost control of his motorcycle while crossing the patched area and that it was later determined that the steel was protruding from the road surface at or near the location where he lost control of his motorcycle. This, Claimant contends, combined with testimony that the Claimant was exercising due care and there could have been no other possible causes of the accident is sufficient proof of proximate cause in this case. Claimant's argument suggests that Claimant's proof of proximate cause shifted the burden of proceeding to the State to come forward with evidence of causation other than the existence of the

patched roadway and the protruding steel. As to the issue of notice, the thrust of Claimant's reply is that the existence of patches in the area where the steel allegedly protruded from the surface of the roadway was proof of prior notice of a dangerous condition, and that the Illinois Department of Transportation should have foreseen that the steel would or could protrude through the patchwork and create a dangerous condition.

The State of Illinois is not an insurer of the condition of its highways under its maintenance and control, but it does have a duty to use reasonable care in maintaining roads under its control. (*Ohms v. State* (1975), 30 Ill. Ct. Cl. 410.) The exercise of reasonable care requires the State to keep its highways reasonably safe. It is the duty of the State to maintain its highways so that defective and dangerous conditions likely to injure persons lawfully on the highways shall not exist. (*Moldenhauer v. State* (1984), 36 Ill. Ct. Cl. 24.) To be held liable for negligence, the State must have actual or constructive notice of a dangerous condition, and permit the dangerous condition to exist without warning to the motoring public. *Clark v. State* (1974), 30 Ill. Ct. Cl. 32; *Baker v. State* (1989), 42 Ill. Ct. Cl. 110, 115.

In *Baker, supra,* Claimant's motorcycle went out of control on an exit ramp allegedly because the State had allowed gravel to accumulate on the exit ramp. Claimant contended that when his motorcycle hit the gravel, he lost control and was injured. IDOT employees testified that they cleaned debris from the road when it was seen and observed. The road was observed by IDOT employees daily and there were no reports of debris on the exit ramp in question. IDOT employees did not remember sweeping any crushed rock or gravel off of the exit ramp. Photographs of the scene showed rocks off of the main

traveled portion of the roadway. Citing *Wagner v. State* (1978), 32 Ill. Ct. Cl. 50, this Court held, in *Baker, supra,* that there was an absence of proof as to how long the condition had existed and no evidence upon which to charge the State with notice of the existence of a dangerous condition. On the basis of the fact that the State had not been shown to have actual or constructive notice of a dangerous condition, the claim was denied.

In order to sustain Claimant's theory of liability in this case, we must be prepared to find and hold that the existence of patching in the area where the steel allegedly protruded from the main traveled portion of the roadway constituted direct evidence of prior notice of a dangerous condition on the part of the State. It is clear that asphalt patches were present at the scene of the steel which allegedly protruded from the surface of the roadway. It does not follow that the existence of these patches imputes prior knowledge of a dangerous condition to Respondent. Indeed, the evidence is clear and uncontradicted that the existence of the steel protruding from the roadway was hard to determine and could not be seen by passing motorists. The steel was not seen or observed by the Claimant prior to the accident, nor was it seen or observed by persons whose duty it was to inspect the condition of the highway. All those testifying on the point agreed that the existence of the allegedly dangerous condition could not be easily observed due to the fact that it "blended" into the patchwork on the roadway at the scene where the Claimant lost control of his motorcycle. Furthermore, there is absolutely no evidence, other than pure speculation, that the steel allegedly protruding from the surface of the roadway was the, or any, proximate cause of the Claimant's loss of control of his motorcycle. The State does not have the burden of explaining how it came to pass that the Claimant lost control of his motorcycle. The

burden of proof remains with the Claimant throughout the course of the trial. It is not up to the State to bring forward evidence or speculation as to what conditions or causes may have existed with respect to the accident other than the causes alleged by the Claimant.

Claimant has failed to prove that Respondent had actual or constructive notice of a dangerous condition which was the proximate cause of Claimant's injuries.

Based upon the foregoing, we must hereby deny this claim.