(No. 94-CC-2679—

ANNA MARIE BERG, Personal Representative of the Estate of LOUIS RADABAUGH and Individually, Claimants, *v.* ILLINOIS DEPARTMENT OF TRANSPORTATION, Respondent.

*Opinion filed July 20, 1999.*

*Order on request for rehearing filed September 28, 1999.*

NELSON, BEMENT, STUBBLEFIELD & LEVENHAGEN (TIMOTHY C. STUBBLEFIELD, of counsel), for Claimant.

JIM E. RYAN, Attorney General (BRIAN J. DEES, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

The Claimants, Louis Radabaugh and Anna Marie Berg, husband and wife, brought this action for compensatory damages pursuant to the Illinois Court of Claims

Act, 705 ILCS 505/8. The Claimants assert that they were injured as a direct and proximate result of negligence committed by the State of Illinois and arising out of an auto accident on Interstate 55 near the Joliet Road exit in the southbound lanes.

At 7:38 a.m. on November 29, 1992, Louis Radabaugh was driving south on Interstate 55 near Joliet Road when he lost control of his auto, allegedly due to an icy bridge, struck a guardrail, became airborne and landed in a ditch. Both Claimants were injured in the accident. Radabaugh, who was rendered a quadriplegic, died in June 1994 allegedly as a result of his injuries. Radabaugh's estate was substituted as Claimant for Radabaugh individually in pretrial motions at hearing. Ms. Berg is Mr. Radabaugh's widow and introduced letters testamentary for her husband's estate into evidence at hearing without objection.

Hearing was held on May 27, 1997, before Commissioner Clark in Collinsville, Illinois. Ms. Berg was represented by counsel and testified at said hearing. Pre-trial motions were entertained and the following orders by the Commissioner were entered:

1. The estate of Louis Radabaugh is substituted as Claimant for Louis Radabaugh.

2. The parties agreed that Mr. Radabaugh's damages exceed the statutory limit of $100,000 and said maximum damages are stipulated if liability is found against Respondent.

3. Respondent moved to file its affirmative defense of comparative negligence. The motion was granted and Claimants made a general denial of record.

Claimants' complaint is in four counts sounding in tort. Counts I and II are on behalf of Mr. Radabaugh.

Damages are sought for personal injury, pain and suffering, permanency of injury and medical expenses, as well as lost wages proximately caused by IDOT's negligence.

Claimant Radabaugh alleges that IDOT failed to repair, correct or warn of a known hazardous condition on a roadway under its control. It is further alleged that IDOT negligently designed and maintained said roadway.

Counts III and IV allege that the State breached the same duties indicated in counts I and II as regards Ms. Berg. Ms. Berg seeks damages for medical expenses, pain and suffering, permanent injury, lost wages and loss of society, companionship and consortium of her spouse.

The record indicates no proofs offered in support of the allegations of negligent design, failure to repair, or failure to warn, and we shall not consider said allegations in our findings. The evidence of record indicates that a maximum of two awards may result if liability is attributed to Respondent. No case law supports Claimant Berg's contention that four awards of $100,000 each are legally cognizable.

We shall consider only the claims of Ms. Berg personally, and as representative of her husband's estate arising from IDOT's alleged failure to perform salting operations in a timely manner, pled as negligent maintenance herein.

The following persons testified at hearing. Claimant Berg, Kathleen Farrell, Illinois State Police Troopers Erin Hehl and Anthony J. Hoop; Illinois State Police Msgt. David Salinas; Jacek Tyskiewicz, south area operations engineer in the IDOT Bureau of Maintenance; and James E. Sterr, IDOT region 2 claims manager. The Commissioner admitted into evidence photographs of the scene and the Claimants' car after the accident; photographs of Radabaugh before and after the accident; Berg's medical bills

and records; a deposition of Dr. Richard Gayle, Berg's physician; a deposition of Trooper Erin Hehl; a deposition of Trooper Anthony J. Hoop; a deposition of Msgt. David Salinas; a letter from IDOT to the Claimants' attorney; a letter from the Claimants' attorney to IDOT; and exhibits that accompanied the depositions that were adopted into evidence. The Respondent filed a departmental report, and both parties filed briefs.

Ms. Berg testified that at the time of the accident, which occurred on a Sunday, she and her husband were headed home to Piedmont, Missouri, after spending Thanksgiving with relatives in Chicago. Berg stated that Radabaugh was driving south on Interstate 55, and she had just settled in for a long drive when she heard her husband exclaim something to the effect of "Oh God." Berg looked up and saw lights from a patrol car. The next thing she knew, the car had hit the guardrail, went airborne, then came to rest upside down. Berg stated that, although she did not see the speedometer, she believed her husband was driving about 50 mph in the 55-mph zone. She characterized Radabaugh as a very conservative, safe driver. Radabaugh was rendered unconscious, and Berg was pulled from the car through the passenger window following the incident.

Ms. Berg testified to medical bills in the amount of $12,792.67 and introduced proofs supporting said claim. Ms. Berg also claimed a total of $8,400 in lost wages as a result of her own injuries and time off to care for her disabled husband. Ms. Berg introduced the testimony of a caretaker who supported her testimony as to the care required as a result of Mr. Radabaugh's paralysis and the commensurate changes to the couple's daily lives resulting from the accident.

Illinois State Trooper Erin Hehl was deposed on May 12, 1996 by Claimant. Respondent was represented by

counsel at the deposition but posed no questions of the deponent. The deposition was admitted without objection as Claimant's exhibit number 19 at hearing. Ms. Hehl testified via telephone at hearing on behalf of Respondent. Trooper Hehl filed the accident report regarding Claimants' incident and witnessed the crash from her squad car. Ms. Hehl's testimony indicates she had been employed by the Illinois State Police for six years as of 1992. She also testified to 40 hours of training in accident investigation by the Illinois State Police. Ms. Hehl was familiar with the roadway in question and had previously been assigned patrol duties on the subject portion of I-55. Ms. Hehl also stated that she had investigated and filed reports on over 1,000 accidents pursuant to her employment.

Trooper Hehl testified that she was dispatched at 6:37 a.m. on November 29, 1992, to an accident on I-55 at Joliet Road. Upon her arrival, she discovered two vehicles had left the roadway—one in a ditch in the left center median and the other off the right side of the road. While she was investigating the two incidents above, a third car left the roadway and came to rest in a ditch. Ms. Hehl saw other vehicles spin or "fishtail" in traversing the roadway after her arrival. Ms. Hehl stated that her investigations of the incidents which preceded her arrival indicated that the drivers of the errant vehicles lost control of their vehicles on a slippery or icy bridge surface.

Ms. Hehl testified that she requested an IDOT salt truck in a call to the State Police telecommunicator at approximately 6:45 a.m. shortly after her arrival at the accident scene. A second call was made by Ms. Hehl but the exact time of said call and a record thereof was not discovered.

Ms. Hehl testified that, in her experience as a State trooper, requests for IDOT salt trucks made in similar

fashion were generally answered in five to ten minutes at the subject locale. Ms. Hehl acknowledged that response time would be delayed if an isolated condition or incident required summoning an off-duty IDOT employee to report to work on a weekend or in an emergency.

Trooper Hehl testified that she witnessed Claimants' accident from the rear-view mirror of her squad car over a three to four second time frame. She stated that Mr. Radabaugh appeared to be driving normally and she saw no indicia of careless or negligent actions of the driver prior to the skid and crash at issue.

Trooper Anthony J. Hoop's prior deposition and telephone testimony at hearing were admitted in like manner to Trooper Hehl's testimony. Trooper Hoop was similarly trained and had about two years experience at the time of the accident. He responded to a call for assistance by Hehl and arrived at the scene at about 6:45 a.m. After conferring with Ms. Hehl, he positioned his squad car east of Hehl's car and activated the emergency lights in an effort to apprise motorists of an accident scene and possible hazard. Mr. Hoop stated he also made two calls to the State Police telecommunicator to pass on requests for an IDOT salt truck after observing several motorists spin or "fishtail" on the bridge deck prior to Claimants' accident. Trooper Hoop did not witness Claimants' accident but provided assistance to Trooper Hehl in freeing both Claimants from their overturned auto, and giving CPR prior to the arrival of EMTs.

Trooper Hoop stated in his experience as trooper, requests made through the State Police telecommunicator for IDOT salt trucks generally resulted in a truck arriving within 30 minutes of a State Police request.

Both troopers believed that the slippery or icy condition of the I-55 bridge deck caused, or directly contributed

to, Claimants' accident. Neither trooper actually surveyed the bridge deck on foot on the morning in question. However both observed traffic for about an hour prior to the incident. The traffic was characterized as light and normal for an early Sunday morning. Both observed motorists sliding, "fishtailing" or skidding on the bridge deck despite the presence of two squad cars with flashing lights intended to warn of peril.

Neither Ms. Hehl nor Mr. Hoop had any knowledge of IDOT practice or procedure on the day in question. They were also unadvised as to the availability, or proximity of, IDOT crews or equipment on said date or in general practice, and had no direct knowledge of the identity of IDOT personnel on the scene of the accidents or otherwise on duty.

Respondent presented Mr. Jack Tyskiewicz via telephone testimony at hearing. Mr. Tyskiewicz is south area operations engineer for IDOT. He held the same position as of the accident date in the maintenance operations area encompassing the accident site. He is a licensed civil engineer and has 18 years experience in highway maintenance.

He testified to IDOT practices for salting and inspection of roadways on the south section under his supervision. The south section includes I-55 and its exit/entrance ramps from County Line Road to Lake Shore Drive, a distance of some 2.6 miles with ten bridges or elevated structures on each side of the highway. Normal procedure is that a salt truck travels at approximately 45 mph while inspecting the roadway, ramps and bridges and applies salt as necessary at a speed of about 35 mph. Mr. Tyskiewicz estimated that a salt truck patrol of the section would take one and one-half to two hours. He noted that he lacked documentation at hearing as to the exact number of exit/entrance ramps in the section which require the salt truck

driver to inspect and treat the road surface as needed, cross the highway and return via an entrance ramp to continue patrol, which might require additional time.

Mr. Tyskiewicz stated that IDOT does not normally have salt trucks patrolling and treating the roadways on Saturdays, Sundays or holidays. Trucks are dispatched on those days based upon receipt of weather advisories from an IDOT meteorologist. IDOT's practice is also to have two trucks loaded with salt at all times to facilitate timely response when needed. On weekends, drivers are summoned from their homes and report to the maintenance yard where they then report to supervisory personnel, collect assigned vehicles or equipment, and proceed to carry out their particular duties. Drivers report to IDOT if conditions warrant that additional personnel and equipment are needed.

On the day in question, a salt truck was dispatched at 12:45 a.m. and patrolled until 10:15 a.m. per IDOT records. We have no evidence of record as to the identity or actions of the driver, other than his hours of operation and that two tons of salt were used during his shift. Discovery by Claimants and Respondent's departmental report disclosed no written records of telecommunications from the State Police to IDOT or from the salt truck driver to IDOT during his shift. There is no direct evidence indicating IDOT received the State Police requests for a salt truck between 6:45 a.m. and 7:38 a.m. on November 29, 1992, as made by Troopers Hehl and Hoop. Respondent's departmental report includes a letter from the litigation unit supervisor, Michael Fitzgerald of IDOT, May 12, 1994, which concludes that IDOT was probably advised of a slippery condition in general by the State Police. The writer's letter appears to be a response to a request for information from the Attorney General's staff. The conclusion reached as to notice by

the State Police at an unspecified time to IDOT is attributed to an unidentified yard technician, who opined that, lacking notice by police patrols or weather conditions, a frost patrol would not be employed on a Sunday under normal IDOT practice. This conclusion is noted as probable, despite the fact that no documentation of the incident at issue nor towing activities appeared in IDOT records. However, Respondent's brief admits that IDOT had notice of the icy bridge at 6:45 a.m. and the need for a salt truck.

Mr. Tyskiewicz testified that frost on bridges or overpasses is very difficult to predict based upon his experience. He stated that frost may occur in isolated locations when other similar structures and nearby portions of the roadway are clear and unaffected. The testimony and evidence of record indicate that a salt truck would normally carry ten tons of salt. As only two tons of salt were used during a nine and one-half hour shift, the parties both conclude that the icy conditions complained of were not widespread over the maintenance area in question.

Mr. Tyskiewicz further testified that IDOT and the State Police regularly exchange information via some from of telecommunication, perhaps including radios. However, neither party introduced admissible evidence of applicable agency procedures and records kept in the normal course of business as to inter/intra-agency communications, other than proof of Ms. Hehl's first call for a salt truck.

Mr. Tyskiewicz testified that under IDOT practice and procedure, a salt truck on patrol may not abandon his assignment to respond to a complaint when his patrol indicates that conditions in his immediate or nearby vicinity require treatment. Normally, one proceeds toward the complaint area while treating the roadway in his path as

warranted. A driver may also request back-up if conditions so warrant under IDOT procedures. Such requests are reviewed by a supervisor, who makes a final determination as to delegation of manpower and equipment.

As previously stated, neither party introduced business records of the communications directly at issue herein, nor witnesses to attest proffered hearsay. The objections of record regarding the testimony of Master Sergeant David Solinas, Illinois State Police, are granted and his testimony is hereby stricken as hearsay. The testimony of James E. Sterr is stricken in accord with Claimants' motion to exclude witnesses at hearing. The testimony stricken was neither directly probative nor necessary to either party's case when analyzed in a light most favorable to the party presenting each witness. Both parties presented other witnesses of record to attest to the facts, opinions and exhibits of record. We have carefully reviewed all objections of record and duly considered the admissible testimony and evidence and the weight of said proofs in our deliberations. Contrary to the presumptions arising from the hearing transcript and consequently argued by the parties in post-trial briefs, the Court does not adopt the premise that hearsay statements allegedly made by unidentified alleged State employees are automatically admissible under section 790.140 of the Court of Claims Rules. Only Trooper Hehl's traffic accident report number 6685239 appears as a State Police business record introduced in Respondent's departmental report. Knowledge of records kept, procedures and business practices of the State Police may not be imputed to IDOT lacking clear proof of record to compel such a finding. No such proofs were introduced by Claimants herein.

Claimants cite the absence of "icing reports" found through discovery on the accident date as evidence supporting a finding of negligence against IDOT. Mr. Tyskiewicz testified upon cross-examination that icing reports are

customarily received from the Illinois State Police by IDOT, as the State Police highway patrol has more vehicles and personnel on State highways on Sunday mornings than IDOT under normal conditions. Claimants' exhibit number 23 is a request from Mr. Ramshur for icing reports made by the fourth district of the Illinois State Police on November 28, 1992, until 8:00 a.m. The request was made of IDOT at its Schaumburg office. Claimants' exhibit number 22 is a reply from Mr. Holub of IDOT, stating his files contained no such report. Mr. Holub suggested that counsel contact the alleged maker of the report(s), the Illinois State Police, by direct inquiry. The record does not contain proofs of the existence of icing reports made by the State Police and maintained as business records. The record as a whole indicates that an "icing report" is not a term of art, but was a broad description of weather conditions which may have been the subject of various inter-agency communications which are not of record.

Claimants must prove the following by a preponderance of the evidence to prevail upon a claim of negligence against Respondent herein:

1. The State breached a duty of reasonable care owed to Claimants in failing to properly maintain a roadway within its care and control;

2. Failure to exercise reasonable care in maintaining the roadway resulted in the existence of a dangerous condition likely to injure persons lawfully using said roadway;

3. Respondent had actual or constructive notice of the existence of a dangerous condition and failed to take reasonable action to remedy same;

4. Respondent's negligence was a proximate cause of the injuries complained of;

5. Claimant was in the exercise of due care for his own safety. See *Toliver v. State* (1994), 47 Ill. Ct. Cl. 55, 59, and *Graves v. State* (1983), 36 Ill. Ct. Cl. 76, 78.

It is the duty of the State to exercise reasonable care in the maintenance and care of its highways in order that defective and dangerous conditions likely to injure persons lawfully on the highways shall not exist. (*Allen v. State* (1984), 36 Ill. Ct. Cl. 242.) The exercise of reasonable care requires the State to keep its highways reasonably safe. (*Id.* at 244.) The State is not required to keep its highways totally free from ice and snow—an impossible task. (*Lynch v. State* (1995), 48 Ill. Ct. Cl. 98, 100.) The State, however, must use all reasonable care to do so. *Id.*

The first step in determining whether the Respondent was negligent is to determine if a dangerous condition existed at the site at issue. To be in a dangerously defective condition, the highway must be in a condition unfit for the purpose for which it was intended. *Baker v. State* (1989), 42 Ill. Ct. Cl. 110, 115, citing *Allen, supra.*

The Respondent argues that the Claimants' case rests on pure supposition and speculation and argues that there was no ice on the bridge because none of the witnesses testified to inspecting the bridge. The troopers, whose experience and expertise was unquestioned, testified that the bridge was icy. Three cars had already left the road, and others were having trouble making their way over the slick bridge surface, as witnessed by Hehl and Hoop. We find a hazardous condition existed prior to Claimants' accident.

We must next determine whether the Claimants proved that this condition was the proximate cause of the Claimants' accident. Proximate cause has been defined as

any cause which, in a natural or probable sequence, produced the injury complained of. (*Suhrbier v. State* (1994), 46 Ill. Ct. Cl. 102, 105.) It need not be the only cause; it is sufficient if it concurs with some other cause acting at the same time which, in combination with it, causes the injury. (*Id.*) There is no doubt here that the icy condition of the bridge was a proximate cause of this accident. Trooper Hehl testified that Radabaugh appeared to be driving normally and she did not see anything that caused her to believe that Radabaugh contributed to the accident. Therefore, the Court finds that the icy bridge surface was a proximate cause of this accident and that the alleged negligence of decedent is not proved.

There is proof in this case of notice of a dangerous condition at some time prior to Claimants' accident. There is also proof that Respondent attempted to remedy ice conditions on I-55 by deploying a salt truck from 12:45 a.m. to 10:15 a.m.

The primary issue in this case is whether the Respondent used reasonable care to keep this highway free from ice, as is required by the *Lynch* case. In *Lynch*, the Court summarily found that the State could not have been charged with liability based on the failure to adequately correct the icy condition. (*Lynch v. State* (1995), 48 Ill. Ct. Cl. 98, 100.) An award was made based upon failure to warn of a hazard which the record indicated had existed for many years. The Court explicitly found the State could not have been held liable for correcting the specific icy condition, lacking actual notice. (*Id.* at pages 100-101.) The award was based upon a finding of constructive notice in a close factual case.

In *Cox v. State* (1993), 45 Ill. Ct. Cl. 201, an award was denied under very similar facts. An accident on an icy bridge deck occurred about 90 minutes after the bridge

deck was salted on a weekend early morning. IDOT had dispatched a driver on patrol due to a weather advisory. Several reports of accidents were actually received by IDOT 45 minutes prior to that accident. The IDOT yard responsible for maintenance was located five to six blocks from the four-lane bridge which was heavily traveled.

*Sutter v. State* (1996), 48 Ill. Ct. Cl. 84, makes a similar finding. The accident also occurred on a weekend morning and failure to respond in a timely manner was alleged. A call from the county police was received by IDOT regarding water on the roadway about 90 minutes before Claimant's accident. Both parties agreed to this fact. The IDOT supervisor who received the message and his subordinate were called to testify as to the particulars of the communications. The evidence indicated there was some debate as to IDOT's maintenance jurisdiction of the bridge in question which led to a delay of some 20 minutes in response time by employees called from their homes to respond. *Sutter* found that, "[S]o long as the IDOT employees conducted themselves in a reasonably diligent manner in relation to the known hazard and circumstances, we cannot hold them to a greater duty." *Id.* at 97.

The evidence herein indicates that the icy condition complained of was isolated. The witnesses who had traveled the same roadway for some distance had no difficulty until they reached the bridge deck. IDOT had begun salting some seven hours prior to the accident on a route of some 52 miles of roadway plus entrance and exit ramps. The "patrol" was estimated to take at least one and one-half to two hours. The testimony regarding response times by IDOT elicited of the State Troopers was directly rebutted by cross-examination and Claimants introduced no further testimony to support a finding that

IDOT's actions were tardy or contrary to normal practice and procedure. Claimants further failed to prove receipt of the troopers' requests by IDOT.

It is hereby ordered that the claims herein are denied.

## ORDER

JANN, J.

This cause comes on to be heard on Petitioners' request for rehearing as to the denial of her claim by opinion of the Court entered July 20, 1999.

We have carefully considered the petition and record herein and find that Petitioners' arguments were previously considered in our original opinion.

Petitioners' requests for rehearing is hereby denied and our opinion of July 20, 1999, is affirmed.